UNITED STATES COURT OF APPEALS FOR THE FIRST CIRCUIT
_____
Number 23-1030
_____

**Melissa Ing**
**Plaintiff-Appellant**

**v.**

**Tufts University**
**Defendant-Appellee**
_____
Appeal from the United States District Court for the District of
Massachusetts
_____

BRIEF OF PLAINTIFF-APPELLANT MELISSA ING
_____

Mitchell J. Notis
Law Office of Mitchell J. Notis
27 Harvard Street
Brookline, Massachusetts 02445
617-487-8677
mitchnotis@aol.com
Counsel for Plaintiff-Appellant

TABLE OF CONTENTS

Page

Table of Contents
Table of Authorities
Jurisdictional Statement……………………………………………………1
Statement of Issues Presented for Review………………………………1
Statement of the Case…………………………………………………….2
    A.  Statement of Facts……………………………………………………..2
    B. Procedural Posture…………………………………………………17
    C. Rulings Presented for Review………………………………………17
Summary of Argument……………………………………………………17
Argument…………………………………………………………………18
Conclusion…………………………………………………………………29
Certificate of Compliance
Certificate of Service

Addendum
Addendum Table of Contents

Order of Judge Stearns Granting Defendant's Motion for
        Summary Judgment…………………………………………………...A-1

October 13, 2022 Final Judgment of Judge Stearns entered
    for Tufts University……………………………………………………….A-19

Copies of pages 8 and 9 of Docket, showing docket entry number 59,
    Electronic Order of November 28, 2022 Denying Motion
      to Alter or Amend Judgment………………………………………..A-20

TABLE OF AUTHORITIES

Page

Cases

Booker v. Massachusetts Department of Public Health,
   527 F. Supp.2d 261 (D. Mass. 2007)…………………………………20

Bulwer v. Mt. Auburn Hospital, 473 Mass. 672, 687 (2016)…………..23

Burlington Northern v. White, 548 U.S. 53, 126 S. Ct. 2405,
165 L. Ed. 2d 345 (2006)……………………………………………20

Casamento v. MBTA, 559 F. Supp. 2d 110 (2008)……………………21

Che v. Massachusetts Bay Transportation Authority,
   342 F. 3d 31 (1st Cir. 2003)…………………………………………19

Dorman v. Norton Company, 64 Mass. App. Ct. 1 (2005)…………….22

Kachmar v. SunGuard Data Systems,
   109 F. 3d 173 (3d Cir. 1997)…………………………………………19

Kosereis v. Rhode Island, 331 F. 3d 207 (1st Cir. 2003)………………..22

Liljestrand v. First Allmerica, 66 Mass. App. Ct. 1112 (2006)………….22

MacCormack v. Boston Edison, 423 Mass. 652, 663-664 (1996)……….20

Mesnick v. General Electric, 950 F. 2d 816, 828 (1st Cir. 1991)………..19

Mole vs. University of Massachusetts, 442 Mass. 582 (2004)…………..19

Ray v. Ropes & Gray LLP,
   961 F. Supp. 2d 344 (D. Mass. 2013)…………………………..20, 22, 26

Sullivan v. Liberty Mutual, 444 Mass. 34 (2005)…………………………22

Trustees of Health and Hospitals vs. Massachusetts
   Commission Against Discrimination, 449 Mass. 675 (2007)…………..21

Verdrager v. Mintz, Levin, 474 Mass. 382 (2016)………………………...23

White v. New Hampshire Department of Corrections,
   221 F. 3d 254 (1st Cir. 2000)………………………………………………20


Statutes

MGL Chapter 151B…………………………………………………..18

28 USC section 1291………………………………………………...1

28 USC section 1343………………………………………………...1

28 USC section 1367………………………………………………...1

42 USC section 1681…………………………………………………18

42 USC section 2000-5………………………………………………1

42 USC section 2000e……………………………………………… .18

**JURISDICTIONAL STATEMENT**

A.  The basis for the District Court's jurisdiction over this dispute was 28 U.S.C. section 1343 regarding federal civil rights claims, 42 U.S.C. section 2000e-5 regarding claims under Title VII of the Civil Rights Act of 1964, and 28 U.S.C. section 1367 regarding state civil rights claims.

B.  The  basis for the Court of Appeals' jurisdiction is 28 U.S.C. section 1291, regarding appeals from final judgments of district courts.  This is an appeal from a final decision of the District Court for the District of Massachusetts.

The decision under review was docketed on October 13, 2022, and became final on November 28, 2022, when Dr. Ing's Motion to Alter or Amend Judgment (filed on November 9, 2022) was denied.

The Notice of Appeal in this action was filed on December 23, 2022.

C.  This appeal is from a final order or judgment which disposes of all parties' claims in the underlying action.

**STATEMENT OF ISSUES PRESENTED FOR REVIEW**

1.  Whether the decision of the District Court was in error in holding that Plaintiff-Appellant was not discriminated against based upon her gender when she was denied a promotion in 2018.

1

2.  Whether the decision of the District Court was in error in holding that Plaintiff-Appellant was not retaliated against for filing a claim of sexual harassment and opposing sexual harassment, when she was informed in January 2019 that she would not be recommended for promotion in 2019, and when she was not recommended for promotion in October 2019.

3.  Whether the decision of the District Court was in error in granting summary judgment on the retaliation claims of Plaintiff-Appellant despite the existence of a genuine issue of material fact regarding the retaliation claim.

## STATEMENT OF THE CASE

### A. Factual Background

This is a case in which Dr. Melissa Ing, an extremely competent, qualified Associate Professor of Dental Medicine at Tufts University School of Dental Medicine, was subjected to sexual harassment by a colleague, reported that sexual harassment, was denied promotion to full professor, and was then denied the opportunity to reapply for promotion to full professor.

### The Sexual Harassment

Dr. Melissa Ing started teaching dental medicine at the Tufts University School of Dental Medicine in 2011. Starting in 2017, Dr. Ing was subjected to unwanted advances and attention by an older colleague, Dr. Roland

2

Vanaria. Dr. Vanaria would often linger around Dr. Ing's office and would frequently make inappropriate sexual innuendo comments to Dr. Ing. His improper, harassing conduct included the following:

1) Dr. Vanaria asked Dr. Ing on a date;

2) Dr. Vanaria asked Dr. Ing to lift up her lab coat on numerous occasions;

3) Dr. Vanaria would leer at Dr. Ing's body parts, especially her breasts and legs;

4) Dr. Vanaria would say he liked Dr. Ing's boots, nylons and shoes;

5) Dr. Vanaria asked Dr. Ing to have "monkey business" with him.

Joint Appendix ("JA") at 417; 419; 420 and 422.

(6). Dr. Vanaria would slap his thigh and say to Dr. Ing, "come on Hon, why don't you sit on my lap."  JA at 410.

## THE INTERNAL TUFTS OFFICE OF EQUAL OPPORTUNITY INVESTIGATION OF DR. ING'S ALLEGATIONS OF SEXUAL HARASSMENT

Dr. Ing complained to her supervisor about Dr. Vanaria's actions, and the supervisor (Dr. Arsenault) reported the sexual harassment to the Tufts Office of Equal Opportunity ("OEO").  Ms. Alida Bogran-Acosta was the Tufts OEO investigator assigned to investigate Dr Ing's allegations of sexual harassment against Dr. Vanaria. JA at 431. Ms. Bogran-Acosta never completed her investigative report regarding the allegations against Dr.

3

Vanaria.  JA at 432.

Ms. Bogran-Acosta acknowledged that Dr. Ing's allegations were allegations of sexually harassing conduct, Id., but found that Dr. Vanaria's conduct did not violate Tufts' sexual harassment policy. JA at 44.

During her investigation, Ms. Bogran-Acosta learned there had been prior allegations of sexually harassing conduct by Dr. Vanaria.  JA at 434-435.

Ms. Bogran-Acosta testified that she could not establish that Dr. Ing's allegations (other than asking Dr. Ing on a date) had occurred, as Dr. Vanaria denied engaging in this conduct.  JA at 433.

Ms. Bogran-Acosta testified that she believed Dr. Vanaria, "Because he seemed genuine—he seemed, it's a different generation…I'm telling you that the sensibility of older men in the workplace are different than current. I'm telling you as someone who is married to a spouse who is significantly older than me.  It has taken me some time to get him to understand why some things are not appropriate."  She also questioned whether Dr. Vanaria was staring at Dr. Ing's breasts or legs as he was "cross-eyed." JA at 436.

Dr. Ing testified that Ms. Bogran-Acosta had yelled at her in a conversation in November 2017, and that the prior month in a phone call Ms. Bogran-

4

Acosta had told her that she (Dr. Ing) did not know what sexual harassment was. JA at 43c6. Also during the November 2017 conversation, Ms. Bogran-Acosta said to Dr. Ing that Dr. Ing was raising her allegations because of "Harvey Weinstein, Matt Lauer and the Me Too Movement." Id.

Despite these failings in the Tufts internal OEO investigation, the Trial Court apparently believed the OEO investigation "reasonable." JA at 499.

Dr. Ing alleges that after making the sexual harassment complaint, she was bullied by friends of Dr. Vanaria at the Dental School (Complaint par. 20), and that Dr. Vanaria was frequently scheduled to work on the same floor as Dr. Ing. Eventually, Dr. Vanaria ceased working at Tufts.

### Dr. Ing's 2018 Application for Promotion

By 2018 Dr. Ing was highly involved in various educational and leadership activities at the school, was highly thought of, and had achieved the rank of Associate Professor. Dr. Ing desired to be promoted to Full Professor, a position she for which she was fully qualified, and which she had earned through her hard work, accomplishments and the fact that she met and exceeded all of the criteria for promotion.

Dr. Ing's supervisor Dr. Arsenault testified that he enjoyed working with Dr.

5

Ing. He stated that she was a very bright individual, thoughtful, creative and very intelligent. In his opinion she was hard working, reliable, honest and truthful.  He stated that he was not sure why she had not been promoted. JA at 480-481.  In Dr. Arsenault's opinion, Dr. Ing should have been promoted.  JA at 481-483.  Once Dr. Zandona became Chairperson, Dr. Arsenault told Dr. Zandona that Dr. Ing should be promoted.  JA at 481; 483.

One of the individuals on the Faculty Appointments, Promotion and Tenure Committee ("FAPTC") was Dr. Amato.  Dr. Amato reviewed Dr. Ing's dossier several times during the promotion process.  Dr. Amato testified that Dr. Ing had a very thorough dossier, and that her teaching was "outstanding."  JA at 463.

Individuals seeking promotion to Full Professor in the Dental School, were required to have a letter of recommendation from their Department Chairperson.  The Chairperson of Dr. Ing's department prior to that position being held by Dr. Zandona, was Dr. Charles Rankin. Dr. Rankin was the Chairperson when Dr. Ing applied for promotion, and when the FAPTC considered her application.

In 2018, Dr. Rankin wrote a letter of support for Dr. Ing's promotion from Associate Professor to Professor. Among other things, he wrote the

6

following:

> "Since coming to Tufts University School of Dental Medicine, she has taken the initiative and responsibility in organizing several courses and workshops....When a project or a positive change is discussed, her enthusiasm and energy leads the way in its implementation and integration into our curriculum...She organizes and manages these courses in addition to her duties teaching operative dentistry in the pre-doctoral clinic.
>
> Since 2011, Dr. Ing has produced and directed no less than 21 educational videos which have been enthusiastically received by the student body. She leads the way in innovative education.
> …
> Dr. Ing has participated in a multitude of research projects...One of the most fantastic projects Dr. Ing has developed and nurtured is the mini medical school program in which she introduces middle grade students to the concept of head and neck anatomy, tooth anatomy, sutures, emergency medicine (CPR), vital signs and tick borne diseases... she has made a multitude of appearances in many public schools, events and television.
> …
> Dr. Ing is a dynamo. She is the first to volunteer to serve on a committee here at the school and now serves on three different committees. Her enthusiastic participation on these committees has made her an integral cog in the daily operation of our school. Dr. Ing's positive contributions to our school and our profession have been exemplary and unique.
>
> …Again, I strongly urge you look favorable upon her promotion to professor."

JA at 372-374.

Dr. Ing herself has stated her qualifications in summary form, in her Charge

of Discrimination as follows:

I graduated from Tufts Dental School in 1989. While in dental school I was one of six people chosen as student teaching faculty members. I knew even then that my career would always be in dental education. I am totally dedicated to the profession, and to education. My CV clearly states this. I have been teaching dentistry since 1992. I have won numerous teaching awards including the Kaiser-Permanente award for Teaching Excellence, twice, from the University of Connecticut School of Dental Medicine, where I continued my teaching career. I have had numerous teaching award nominations from both the University of Connecticut and from Tufts, including the Tufts Teaching with Technology award and Tufts Distinction Awards, and have been inducted into the Tufts Robert Andrews Research Society for promoting research. I was nominated for Tufts Sesquicentennial Award for service to the institution. In addition, I was nominated for the 2020 National Science Board Public Service Award and I was nominated for the national 2020 Presidential Award for Science, Math, and Engineering Mentoring. I won the very prestigious national Award for Teaching Excellence given by the American Dental Education Association and Colgate Palmolive in 2015. I have lectured locally, nationally, and internationally; many of my abstracts, manuscripts, a book chapter, online articles, an international webinar, and international podcasts have been published. I am a recognized authority, both nationally and internationally in my areas of expertise. I have been in leadership roles within Tufts, with statewide projects, and I hold several national leadership roles.  I started working for Tufts in June 2011.

JA at 409.

As is discussed in detail below, there were no minutes produced of the

FAPTC meetings reviewing Dr. Ing's application for promotion, and there is

contradictory evidence as to whether such minutes ever existed or were

maintained, all despite the requirement in the Faculty Rules of Procedure

that such minutes be taken and kept.

Dr. Ing's promotion application was presented to the FAPTC on March 27, 2018 and April 3, 2018. On March 27, 2018 it was presented by Dr. Galburt, and on April 3, 2018 it was presented by Dr. Amato. JA at 384; 444; 446 and 460.

At the FAPTC meetings regarding Dr. Ing, one of the issues was whether or not she was a "Course Director." JA at 460. However, the FAPTC had to discuss the definition of the term "Course Director" before determining that Dr. Ing did not meet this requirement. Dr. Ing is specifically listed as "Course Director" on the course listing for "Operative Workshop-Intro to Clinical Materials." Id.

A vote was taken by the FAPTC regarding Dr. Ing's promotion by anonymous digital survey. The document supposedly reporting the vote has no heading, and is undated, but it indicates that of seven voting members, five disapproved of the promotion, one abstained, and one voted to "table" the application. JA at 390.

There was no vote taken on Dr. Ing's application at the March meeting. At some point after the April meeting but before Dr. Amato reviewed Dr. Ing's application a second time, the vote was taken. **After the vote disapproving the promotion**, Dr. Amato reviewed Dr. Ing's application a second time.

9

JA at 461-462.  No reason for this additional review has been provided.
At the request of Dr. Trotman, Dr. Amato reviewed Dr. Ing's dossier a
second time in late June 2018.  He testified that there was another meeting in
June regarding Dr. Ing's promotion, but he also testified that his second
analysis (the one done in late June) he thought was only presented to Dr.
Trotman.  Dr. Amato did not know why Dr. Trotman asked him to review
Dr. Ing's dossier a second time.  When asked why he was reviewing
Dr. Ing's dossier a second time, Dr. Amato stated "she may have appealed,"
and "I think we are all aware there was an appeal." Id.  This was not
feasible, as Dr. Ing did not even learn of the promotion denial until
September 19, 2018, nearly three months after that second review by Dr.
Amato.  JA at 425; 448.

After Dr. Ing's promotion was not acted upon favorably in April 2018, in
July and August 2018 there was a series of five letters drafted or edited in
part by Dr. Galbert, Dr. Trotman, Ms. Bankowski, and Dean Thomas
regarding the FAPTC decision, with the final letter being signed by Dr.
Palmer.  The first and second drafts did not say the promotion had been
denied, but rather that it was being withheld until later.  The third
draft referred to reconsidering the application.  The fourth draft referred to

withholding the promotion until a later date and then reconsidering the decision. **It was only the fifth and final draft, <u>apparently edited by Dean Thomas</u>, which simply stated that the promotion was being denied. JA at 397-405. Dean Thomas' decision was different than the prior determinations.**

Dean Thomas testified that at the time of the FAPTC meetings regarding Dr. Ing, he <u>was</u> aware of Dr. Ing's allegations of sexual harassment. He also testified that he "possibly" discussed her promotion application with Ms. Bankowski, the non-voting administrator and his assistant, who sat in on FAPTC meetings. Ms. Bankowski stated that she <u>had</u> informed Dean Thomas of Dr. Ing's sexual harassment allegations and that those allegations had been reported to the Tufts Office of Equal Opportunity. She also mentioned that there were two sexual harassment allegations against Dean Thomas while she worked for Tufts. JA at 443; 455.

Dr. Ing's application for promotion was disapproved in early April 2018. She was not informed of the denial until mid-September 2018. **Dean Thomas could think of no reason that there would be a five month gap between when a promotion application was denied, and when the applicant was notified of the denial.** JA at 456.

11

**THE MISSING MINUTES OF THE FAPTC MEETINGS AT WHICH DR. ING's PROMOTION WAS DISCUSSED AND DISAPPROVED**

According to the Tufts University School of Dental Medicine Faculty Bylaws in effect during 2018, at Article IV, Section 4.07(g), Standing Committees such as the Faculty Appointments, Promotions and Tenure Committee (referred to in Section 4.09(g)), are to keep minutes of meetings, and forward those minutes to the Faculty Secretary. SOF at 189. The School of Dental Medicine Faculty Bylaws are found at JA 376.

Section 4.09(g) of the Bylaws establishes the FAPTC as a Standing Committee. Section 4.07(g) of the Bylaws **mandates** that Standing Committees such as the FAPTC must keep minutes of their meetings. That section states:

> "The Standing Committee chairperson or designee must keep minutes of meetings and forward copies to the Faculty Secretary; And file an annual report of the work of the Standing Committee with the Dean and the Faculty Secretary, which will be made available to any faculty member upon request."

Ms. Monika Bankowski served as the Faculty Affairs Officer at the Dental School in 2018, working as, among other things, executive assistant to Dean Huw Thomas.

In that position Ms. Bankowski attended meetings of the FAPTC as a non-voting administrator. **She testified that she took minutes**

12

**at all of the FAPTC meetings, and that she took minutes at the first and second meetings at which Dr. Ing's application for promotion was presented.** She stated that there should be an official record in the FAPTC files of those minutes, **which should still exist**.

To the contrary, Dr. Amato testified that when the FAPTC was chaired by Dr. Palmer (the time period when Dr. Ing's promotion application was considered by the Committee), no notes of meetings were taken. JA at 459. Minutes of the 2018 FAPTC meetings were requested to be produced, in Plaintiff's Request for Production of Documents in this action. No such minutes were produced, as, according to Counsel for Defendant, it was counsel for Defendant's understanding that no such minutes existed. JA at 369.

## DR. ZANDONA'S REFUSAL TO RECOMMEND DR. ING FOR PROMOTION

As has been noted, in order for an Associate Professor at Tufts School of Dental Medicine to be promoted to Full Professor in 2018 and 2019, one requirement was that the candidate's Department Chairperson recommend that candidate for promotion. When Dr. Ing applied for promotion in 2018, her Chairperson was Dr. Charles Rankin, whose stellar letter of recommendation has been cited earlier.

13

In late 2018, Dr. Rankin was replaced as Chairperson of Dr. Ing's department by Dr. Andrea Zandona. Dr. Zandona first met with Dr. Ing on December 13, 2018.

During this meeting Dr. Ing told Dr. Zandona of having been sexually harassed by a colleague at Tufts, Dr. Vanaria, and having filed a complaint with Tufts about that. JA at 426-427; 469. In this conversation, Dr. Ing was making Dr. Zandona aware of her active opposition to sexual harassment.

**In a meeting on January 9, 2019, only 27 days later, at which Dean Thomas, Ms. Bankowski and Dr. Zandona attended, one of the first things that Dr. Zandona said to Dr. Ing was "I most likely am not going to promote you."** In a memo Dr. Ing wrote to Ms. Bankowski and copied to the Provost later that day, Dr. Ing confirmed this statement by Dr. Zandona, when she wrote "I was quite shocked today at the meeting where I was told to meet with a new chairperson and was told that she may not write a positive letter of support like Dr. Rankin did." JA at 392; 427.

In her deposition, Dr. Zandona acknowledged that on December 13, 2018, she knew nothing about Dr. Ing, and that prior to January 9, 2019, **she knew nothing about Dr. Ing's qualifications** to be promoted to Full Professor, as Dr. Zandona had not looked at Dr. Ing's dossier. At that time Dr. Zandona

14

had spoken to no one about Dr. Ing's qualifications. JA at 470-471.

During Dr. Zandona's deposition, **Dr. Zandona denied having stated to Dr. Ing during the 1/9/19 meeting "I am most likely not going to promote you," or words to that effect, and claimed to have said nothing remotely like that.** Dr. Zandona testified that she would not have said that, <u>**as she did not know Dr. Ing's work well enough at that point**</u>. JA at 472.

It is this specific interaction between Dr. Zandona and Dr. Ing, the statement made by Dr. Zandona, Dr. Zandona's denial of having made the statement, and Dr. Zandona's explanation that at the time the statement was made she would have had no basis to make the statement, which forms the crux of the central issue of disputed material fact, w<u>hich the Trial Court simply ignored</u>.[1]

In a meeting with Dr. Zandona on March 21, 2019, **Dr. Zandona asked Dr.**

---

[1] In its decision denying Dr. Ing's Motion to Alter or Amend Judgment, JA at 502, the Trial Court stated that "The court fully considered this statement on the circumstances surrounding it in its summary judgment opinion." However, there is absolutely no discussion of this matter in the decision granting summary judgment. There is no indication of this "consideration."

Ing **"how often are you going to sexual harassment therapy?"** Although

Dr. Ing was taken aback by this question and was very uncomfortable with

the question, she stated that she was going once per week. In response, **Dr.**

**Zandona stated "you need to go more often."**    During her deposition, Dr.

Zandona denied asking Dr. Ing questions about her "sexual harassment

therapy." JA at 472; 477.

In the nine months after she informed Dr. Ing that she would likely not be

recommending her for promotion, Dr. Zandona did not make any good faith

effort to try to help Dr. Ing improve her chances for promotion in the 2019

promotion cycle.  In March 2019, Dr. Zandona said that she was very busy

and did not have time to help Dr. Ing with promotion, even though at that

time she was helping several other doctors seeking promotion who did

indeed receive promotions. Rather, she informed Dr. Ing that Dr. Ing

should wait until July. In April Dr. Ing asked if she could meet with Dr.

Zandona, but Dr. Zandona did not make time for them to meet or talk.

After Dr. Ing emailed Dr. Zandona in May, Dr. Zandona said she would like

to meet with Dr. Ing in July. When Dr. Ing met with Dr. Zandona in July,

Dr. Zandona asked her why she was there. It was at this point that Dr.

Zandona told Dr. Ing that there were new promotion requirements. In a

meeting on October 11, 2019, Dr. Zandona informed Dr. Ing that she would

not be writing the letter of recommendation Dr. Ing required to apply

for promotion. Dr. Zandona then required Dr. Ing to attend a meeting with

her in November, two days prior than the deadline to write a letter of

recommendation.  In this meeting Dr. Zandona told Dr. Ing that she did not

deserve to be promoted.    JA at 394-395; 427-428.

**B. Procedural Posture**

After the Trial Court entered Summary Judgment for Defendant, Plaintiff

filed a Motion to Amend or Alter Judgment.  That motion was denied, and

Plaintiff then commenced this appeal.

**C. Ruling Presented for Review**

The ruling under review is the Trial Court's grant of summary judgment to

Defendant, found at JA 484.

**<u>SUMMARY OF ARGUMENT</u>**

A.  There is a genuine issue of material fact in dispute in this case which

should have resulted in the motion for summary judgment being denied as to

Dr. Ing's claims of retaliation.  Specifically, Dr. Ing claims that only three

weeks after meeting Dr. Ing and learning of her sexual harassment claims, at

a time when her chairperson (Dr. Zandona) had no knowledge of Dr. Ing's

qualifications, Dr. Zandona stated that she would likely not be recommending Dr. Ing for promotion. Dr. Zandona denied making any such statement.

B. Dr. Ing adequately set forth a prima facie case of gender discrimination in relation to the denial of her promotion. Specifically, Dr. Ing adequately proved her qualifications for the position of full professor for her gender discrimination claims on this matter to survive summary judgment.

C.  There were numerous procedural irregularities in the process by which Dr. Ing's 2018 promotion was denied. These numerous violations of policy and practice mandate that a finding of pretext be made regarding the reasons for the promotion denial Taken as a whole, these irregularities establish pretext.

## **ARGUMENT**

### A. Relevant Law

### Retaliation

An employee who has engaged in protected conduct under either 42 U.S. Code section 2000e, MGL chapter 151B or 20 U.S. Code section 1681, suffers an adverse employment action, and can show that the adverse action was causally connected to the protected activity, has made out of prima facie case of retaliation. Ultimately, the employee would have to show that but for

the retaliation, the adverse action would not have occurred.  See, e.g., Mole

vs. University of Massachusetts, 442 Mass. 582, 591-592 (2004); Che v.

Massachusetts Bay Transportation Authority, 342 F. 3d 31 (1ˢᵗ Cir. 2003).

The "protected activity" may be either participation in a process of

complaining of discrimination, or "opposing" discriminatory practices.  Dr.

Ing engaged in both types of protected activity.

The "causal connection" element may be met either by showing a temporal

proximity, or by other means.  As stated by this Court in Che v.

Massachusetts Bay Transportation Authority, 342 F. 3d 31, 38 (1ˢᵗ Cir.

2003):

> "Temporal proximity is but one method of proving
> retaliation...Mesnick v. General Electric, 950 F. 2d 816, 828 (1st Cir.
> 1991) (stating that there are many sources of circumstantial evidence
> that... can demonstrate retaliation). Evidence of discriminatory or
> disparate treatment in the time period between the protected activity
> and the adverse employment action can be sufficient to show a causal
> connection. See Kachmar v. SunGuard Data Systems, 109 F. 3d 173,
> 177 (3d Cir. 1997) (stating that where there is a lack of temporal
> proximity, circumstantial evidence of a pattern of antagonism
> following the protected conduct can also give rise to the inference that
> a causal connection exists)."

As with claims of discrimination, the prima facie showing in a retaliation

case is "a small showing that is not onerous and is easily made."  Che, supra

at 38.

19

Adverse Action

In general, for an adverse action to have occurred in a case alleging

retaliation under Chapter 151B, there must be objective evidence that a

plaintiff was materially "disadvantaged in salary, grade, or other objective

terms and conditions of employment."  See, e.g., <u>MacCormack v. Boston</u>

<u>Edison</u>, 423 Mass. 652, 663-664 (1996).  Adverse employment actions

include "demotions, disadvantageous transfers or assignments, refusals to

promote, unwarranted negative job evaluations, and toleration of harassment

by other employees."  <u>White v. New Hampshire Department of Corrections</u>,

221 F. 3d 254, 262 (1ˢᵗ Cir. 2000); <u>Booker v. Massachusetts Department of</u>

<u>Public Health</u>, 527 F. Supp.2d 261, 228 (D. Mass. 2007).

For the purposes of a retaliation claim under Title VII, there must be a

showing that the challenged action is materially adverse, which means that it

might dissuade a reasonable employee from making or supporting a charge

of discrimination.  <u>Burlington Northern v. White</u>, 548 U,S, 53- 61-67, 126 S.

Ct. 2405, 2411-2415, 165 L. Ed. 2d 345 (2006).

Similarly, a refusal to provide a letter of recommendation for a different

position, can constitute an adverse action.  See <u>Ray v. Ropes & Gray LLP</u>,

961 F. Supp. 2d 344, 358 (D. Mass. 2013)(discussing refusal to provide

letter of recommendation in post-employment context).

Where a letter of recommendation is a mandated prerequisite for receiving a promotion, the failure to provide the letter of recommendation is tantamount of a denial of a promotion, an action clearly constituting an adverse action. **In denying Dr. Ing a letter of recommendation for promotion, Dr. Zandona was subjecting Dr. Ing to an adverse action.**

Prima Facie Case and Proof of Pretext

In discrimination and retaliation cases, there is usually no direct evidence of discrimination or retaliation. Accordingly, the Court must view the circumstantial evidence available. A plaintiff must prove a prima facie case, and must provide evidence of pretext.  See, e.g., Casamento v. MBTA, 559 F. Supp. 2d 110, 116-117 (2008).

In any case alleging failure to promote due to gender discrimination, a plaintiff must show: 1) membership in a protected class; 2) qualification for the open position for which she applied; 3) rejection for the position at issue; 4) the selection of someone possessing similar qualifications.  Casamento, supra at 115.  In the context of this case, the final element of "selection of someone possessing similar qualifications," does not apply, as Plaintiff was not competing against other individuals for a specific vacancy.[2]

_____

[2] In the case of Trustees of Health and Hospitals of the City of Boston, Inc. vs.

There is no question that Plaintiff is a member of a protected class (gender), and no question that she was rejected for promotion. The issue remaining is whether Plaintiff was qualified for promotion. For summary judgment purposes, she clearly was so qualified.

The cases are uniform in teaching that a plaintiff's initial burden in proving a prima facie case is "not onerous." Sullivan v. Liberty Mutual, 444 Mass. 34, 45 (2005); Kosereis v. State of Rhode Island, 331 F. 3d 207, 213 (1st Cir. 2003); Liljestrand v. First Allmerica, 66 Mass. App. Ct. 1112 (2006); Dorman v. Norton Company, 64 Mass. App. Ct. 1, 6 (2005). Indeed, in Kosereis v. Rhode Island, 331 F. 3d 207, 212-213 (1st Cir. 2003), the First Circuit Court of Appeals referred to the prima facie case as a "small showing."

With regard to whether a plaintiff is "adequately" performing her job, the case of Ray v. Ropes & Gray, 961 F. Supp.2d 344 (D. Mass. 2013) is instructive. In Ray, an associate attorney litigated a discrimination action alleging that he had been denied promotion to partnership because he was

_____

Massachusetts Commission Against Discrimination, 449 Mass. 675, 687 (2007), the Court noted that comparator evidence is not necessarily required for a prima facie case of discrimination in promotion.

22

African-American. Defendant Ropes argued that Ray had ailed to

demonstrate a prima facie case of discrimination, as he had not shown that

he was "qualified to become a Ropes partner."

At page 354 the District Court disagreed, saying:

> "...at this preliminary stage, Ray need not show that he was qualified
> for partnership in the sense that he was clearly entitled to partnership;
> rather Ray must merely show that he was sufficiently qualified to be
> among those persons for whom a selection, to some extent
> discretionary, would be made... a number of partners gave Ray at
> least partially positive reviews in his three years with the firm and as
> late as the end of 2007, the Policy Committee still held out the
> possibility (albeit slim) of a partnership. Given that the prima facie
> showing is quite easy to meet... Ray has satisfied the first step of the
> burden shifting framework."

There is no question that Dr. Ing was sufficiently qualified to have satisfied

this element of her prima facie case.  The statements of Dr. Rankin, Dr.

Amato,  Dr. Arsenault and even Dr. Zandona, all confirm that she met this

standard.  Dr. Ing was qualified for promotion to full professor.


In terms of proof of pretext, it is well accepted that failure to follow

established policies and procedures can be deemed proof of pretext.  See,

e.g., Bulwer v. Mt. Auburn Hospital, 473 Mass. 672, 687 (2016). Under

Chapter 151B caselaw, particularly at the summary judgment stage, proof of

pretext is adequate for a case to move forward to trial, and no evidence of

discriminatory motive is required. See, e.g., Verdrager v. Mintz, Levin, 474

Mass. 382, 404 (2016).

23

**ARGUMENT**

**1.** **The genuine issue of material fact as to the refusal to provide a letter of recommendation for promotion.**

On January 9, 2019, only 27 days after their first meeting, Dr. Zandona stated to Dr. Ing that "most likely I am not going to promote you." Although Dr. Zandona has denied making that statement, she has testified that at the time she allegedly made the statement on January 9, 2019, she had no knowledge of Dr. Ing's qualifications for promotion and therefore would not have had a basis to make such a statement.

Given the brief period of time between when she learned of Dr. Ing's sexual harassment claim and when she stated she would most likely not be promoting Dr. Ing, and the complete lack of any valid basis for having told Dr. Ing that she would not be promoting her, **the only possible inference is that the reason Dr. Zandona told Dr. Ing on January 9, 2019 that she would not be promoting her, is because she had learned of Dr. Ing's sexual harassment allegations and her opposition to any form of sexual harassment.** Only two months later, on March 21, 2019 Dr. Zandona asked Dr. Ing **"how often are you going to sexual harassment therapy,"** and then followed up by saying to Dr. Ing that Dr. Ing needed **"to go more often."**

24

Although Dr. Zandona did not definitively state until October that she would not be recommending Dr. Ing for promotion, the facts show that the final denial was merely the confirmation of the decision made by Dr. Zandona nine months earlier.

There is a genuine dispute as to a material fact as to these remarks. If these statements were actually made under the circumstances alleged, there would be a more than an adequate basis upon which a reasonable jury could find that Dr. Zandona had retaliated against Dr. Ing when she informed Dr. Ing in October 2019, that she would not be recommending her for promotion, and that but for the retaliation Dr. Ing would have received the letter of recommendation. Inexplicably, this is essentially the finding made by the Trial Court in denying Tufts' motion to dismiss, and nothing factual on this issue changed since that ruling.

In light of Dr. Zandona having already decided this matter in January, her claims that she acted to assist Dr. Ing later in the year are irrelevant.

The standard of review is whether the District Court erred as a matter of law in failing to hold that there existed a genuine dispute as to a material fact precluding summary judgment. The District Court erred. Adequate evidence was presented regarding Dr. Zandona stating she would not

recommend Dr. Ing for promotion at a time that she had no knowledge of Dr. Ing's qualifications, but did know of Dr. Ing's having made a claim of sexual harassment and opposing sexual harassment.  An inference of retaliation arose, which required that the summary judgment motion be denied. To the extent Defendant-Appellant contested the basis for this inference, a genuine dispute as to a material fact existed.

For the foregoing reasons, the summary judgment decision must be reversed as to the claims for retaliation set forth in Counts II, IV and VI of the Complaint.

### 2.  Dr. Ing Was Qualified for Promotion

In its decision, the Trial court held that "no reasonable fact Finder could, on the evidence produced, conclude that Dr. Ing was qualified for promotion." JA at 496.  This holding was in error.

As is discussed in detail in earlier sections of this brief, Dr. Ing was an eminently qualified candidate for Full Professor. As the legal standard for determining if a plaintiff has made out a prima facie case establishes, a plaintiff need not show that "sufficiently qualified to be among those persons for whom a selection, to some extent discretionary, would be made…" Ray v. Ropes & Gray LLP, 961 F. Supp. 2d 344, 354 (D. Mass. 2013).

Any argument that Dr. Ing was somehow not qualified for promotion, and therefore did not make out a prima facie case of discrimination, must be rejected out of hand.

The standard of review is whether the District Court erred as a matter of law in holding that Dr. Ing had not presented adequate evidence of a prima facie case of discrimination, as not having adequately advanced evidence of her qualification for the position at issue.  The District Court did err, as adequate evidence of Dr. Ing's qualifications was presented below to establish a prima facie case of discrimination, requiring that the decision of the District Court be reversed.

### 3.  The Significant Procedural Irregularities in the 2018 FAPTC Promotion Process

The process engaged in by the FAPTC in reviewing and deciding Dr. Ing's application for promotion in 2018, was highly irregular, and was inconsistent with usual policies and practices of the Committee.

Most serious is the absence of the required minutes for the three meetings at which Dr. Ing's application was discussed. This procedural defect alone, is enough to require a finding of pretext.

The process by which Dr. Ing's application was voted on also raises issues of pretext. There has been no explanation of why Dr. Trotman required Dr.

Amato to review Dr. Ing's dossier a third time (his second time) even after a vote on her application had already been taken.

The series of "disapproval" letters is also suspect. There were total of five letters (four different drafts and then a different final), with the negativity of the letters increasing each time they were edited. It is also noteworthy that the final letter, the only one to actually state that the promotion request had been "denied" (as opposed to being postponed or being left open for reconsideration), was drafted by Dean Thomas. Dean Thomas was aware of Dr. Ing's claims of sexual harassment, and he himself may have had a bias against individuals filing such claims, as he had had several claims of sexual harassment filed against him while he was Dean at Tufts.

Finally, there is no reasonable explanation for why Dr. Ing was not notified of the disapproval of her promotion application until some **five months after the disapproval vote had occurred**.

Based upon these multiple and serious procedural irregularities, it must be found that the reasons advanced for the disapproval of Dr. Ing's promotion were pretextual.

28

The standard of review in this case is whether the District Court erred as a matter of law in holding that Dr. Ing did not set forth adequate evidence of pretext. The District Court did err, as adequate evidence of pretext was presented below to require that the summary judgment motion be denied, and the decision of the District Court must therefore be reversed.

The decision on the motion for summary judgment must be reversed as to the 2018 promotion denial, as to Counts V and VI of the Complaint.

## **CONCLUSION**

For all of the foregoing reasons, it is respectfully requested that the Decision and Order granting summary judgment to the Tufts be reversed, and that these issues be remanded to the District Court for trial.

Respectfully submitted,
MELISSA ING
By her Attorney,

/s/ Mitchell J. Notis

_____

Mitchell J. Notis, BBO# 374360
LAW OFFICE OF MITCHELL J. NOTIS
27 HARVARD Street
Brookline, MA 02445
Tel.: 617-487-8677

29

UNITED STATES COURT OF APPEALS FOR THE FIRST CIRCUIT
_____

Number 23-1030
_____

**Melissa Ing**
**Plaintiff-Appellant**

**v.**

**Tufts University**
**Defendant-Appellee**
_____

Appeal from the United States District Court for the District of
Massachusetts
_____

CERTIFICATE OF COMPLIANCE WITH RULE 32(a)
_____

This brief complies with the type volume limitations FRAP 32(a)(7)(b)
because the brief contains 6208words, excluding the parts of the brief
exempted by FRAP 32(a)(7)(b)(iii).

This brief complies with the typeface requirements of FRAP 32(a)(5) and
the type style requirements of FRAP 32(a)(6) because the brief has been
prepared in a proportionately spaced typeface using Microsoft Word in 14
point font in Times New Roman.

MELISSA ING
By her Attorney,

/s/ Mitchell J. Notis
_____
Mitchell J. Notis, BBO# 374360
LAW OFFICE OF MITCHELL J. NOTIS
27 HARVARD Street
Brookline, MA 02445
Tel.: 617-487-8677

UNITED STATES COURT OF APPEALS FOR THE FIRST CIRCUIT

_____

Number 23-1030

_____

**Melissa Ing**
**Plaintiff-Appellant**

**v.**

**Tufts University**
**Defendant-Appellee**

_____

CERTIFICATE OF SERVICE

_____

I, Mitchell J. Notis, hereby certify that on March 2, 2023, I electronically filed the foregoing document with the United States Court of Appeals for the First Circuit by using the CM/ECF system.  I certify that the following parties or their counsel of record are registered as ECF Filers and that they will be served by the CM/ECF system:

Douglas R. Sweeney, Esq.
Holland & Knight, LLP
10 St. James Avenue
Boston, MA 02116
617-573-5844
Douglas.Sweeney@hklaw.com

Jeremy M. Sternberg, Esq.
Holland & Knight, LLP
10 St. James Avenue
Boston, MA 02116
617-854-1476
Jeremy.Sternberg@hklaw.com

/s/Mitchell J. Notis

_____

MITCHELL J. NOTIS
BBO# 374360
Law Office of Mitchell J. Notis
27 Harvard Street, Brookline, MA
02445
617-487-8677
mitchnotis@aol.com

# ADDENDUM TABLE OF CONTENTS

page

Order of Judge Stearns Granting Defendant's Motion for
     Summary Judgment……………………………………………..A-1

October 13, 2022 Final Judgment of Judge Stearns entered
    for Tufts University…………………………………………………A-19

Copies of pages 8 and 9 of Docket, showing docket entry number 59,
    Electronic Order of November 28, 2022 Denying Motion
     to Alter or Amend Judgment………………………………………..A-20

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 21-10032-RGS

MELISSA ING

v.

TUFTS UNIVERSITY

MEMORANDUM AND ORDER
ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

October 13, 2022

STEARNS, D.J.

Plaintiff Melissa Ing brought this action against the Trustees of Tufts College (Tufts), alleging that the Tufts University School of Dental Medicine (TUSDM) discriminated against her when it denied her a promotion to full professor. Dr. Ing brings claims of gender discrimination and retaliation under three statutes: Massachusetts General Laws chapter 151B (Counts I and II); Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e, *et seq.* (Counts III and IV); and Title IX of the Education Amendments of 1972, 20 U.S.C. §§ 1681 *et seq.* (Counts V and VI). Tufts moves for summary judgment. For the following reasons, the court will <u>ALLOW</u> the motion.

A-1

## BACKGROUND

### A.    Dr. Ing's 2017 Complaint of Sexual Harassment

TUDSM hired Dr. Ing as an associate professor of dental medicine in 2011.   In June of 2017, Dr. Ing informed her division head that fellow TUDSM instructor Dr. Roland Vanaria had sexually harassed her, including in multiple instances asking her to lift up her lab coat and in another asking whether she would like to "have monkey business."   Tr. of Dr. Ing (Dkt # 49-12) at 5-6.   Tufts Office of Equal Opportunity (OEO) investigator Alida Bogran-Acosta later found that Dr. Vanaria had asked Dr. Ing on a date, but she accepted his denials of having made other inappropriate remarks. Bogran-Acosta concluded that Dr. Vanaria's conduct was not sufficiently severe and pervasive to violate Tufts's sexual harassment policy.   Tufts adjusted Dr. Vanaria's schedule and limited his swipe card access to ensure that Dr. Ing had no further encounters with him.

### B.    2018 Promotion Cycle

In November of 2017, Dr. Ing decided to apply for a promotion to a full professorship.   TUDSM's guidelines required an applicant to obtain the endorsement of her faculty chair and to submit a dossier demonstrating her achievement in three Areas of Excellence: the Service, Citizenship, and

A-2

Case 1:21-cv-12082-RGS    Document 54    Filed 01/13/23    Page 3 of 18

Professionalism area and two out of the four additional Areas of (1) Teaching; (2) Educational Leadership; (3) Scholarship, Investigation, and Discovery; and (4) Clinical Instruction, Expertise, and Innovation. The Faculty, Appointments, Promotions, and Tenure Committee (FAPTC) reviewed an applicant's dossier to determine whether it met each of the three criteria.

In January of 2018, Dr. Ing met with Dr. Charles Rankin, her department chair, and Dr. Carroll Ann Trotman, the Associate Dean for Faculty. Dr. Trotman typically advised candidates to spend six months to a year compiling their dossiers, and at the January 2018 meeting she similarly advised Dr. Ing. Dr. Ing selected the Teaching and Educational Leadership Areas of Excellence and obtained an endorsement letter from Dr. Rankin. Dr. Rankin's letter described Dr. Ing as a "dynamo" whose "positive contributions to our school and our profession have been exemplary and unique." March 20, 2018 Letter (Dkt # 49-2) at 3-4.

Dr. Ing sought help from outside advisors while compiling her dossier. She sent her curriculum vitae to Dr. Maria Blanco, the Associate Dean for Faculty at the Tufts School of Medicine. She told Dr. Ing that she would likely "need to expand [her] impact a bit more for a professorship," and particularly to publish more scholarship. Jan. 17, 2018 Email (Dkt # 44-

3

A-3

28) at 5.    Dr. Blanco also counselled Dr. Ing to "not rush it and [to] take the time that you need to better learn about [TUDSM's] expectations."    *Id.* at 4. Dr. Ing also sought the opinion of Dr. Mark Wolff, a professor at New York University College of Dentistry who later became the Dean of the University of Pennsylvania School of Dental Medicine.    He told Dr. Ing that her application "would not pass the Professor process [at] NYU Dental."    Jan. 25, 2018 Email (Dkt # 44-29) at 2.

Dr. Ing submitted her dossier in February of 2018, and the FAPTC reviewed her candidacy that spring.    No member of the FAPTC knew of Dr. Ing's previous complaint of sexual harassment.    While there are no minutes of the FAPTC meetings, the four FAPTC members who were deposed in this litigation testified that her harassment complaint had not been discussed.

FAPTC member Dr. Roger Galburt presented Dr. Ing's dossier at a March 27, 2018, FAPTC meeting.    He opined that Dr. Ing did not satisfy the Educational Leadership Area of Excellence.    Dr. Galburt requested that another FAPTC member present Dr. Ing's dossier at the FAPTC's next meeting after an independent review.    Accordingly, Dr. Robert Amato presented Dr. Ing's dossier at the FAPTC's April 3, 2018, meeting.    He agreed with Dr. Galburt that Dr. Ing should not be promoted because she had

4

A-4

Case 1:21-cv-10032-RGS Document 54 Filed 10/13/22 Page 5 of 18

fallen short of the Educational Leadership standard. Drs. Galburt and Amato's contemporaneous notes reflect their disagreement with Dr. Ing's characterization of herself as a "course director," as she had only directed a brief workshop. Dr. Amato also noted that Dr. Ing had not served in a leadership position at TUDSM, such as a committee chair, and was not involved in any organizations related to the advancement of dental education. After the conclusion of the second meeting, five FAPTC members voted against Dr. Ing's promotion, one abstained, and one voted to table her application. Following the vote, Dr. Trotman asked Dr. Amato to review the dossier a second time.

Dr. Ing first learned that she would not be promoted at a September 19, 2018, meeting with Dr. Trotman and TUDSM faculty affairs officer Monika Bankowski, where Dr. Trotman outlined the reasons for the denial. The next day, Dr. Rankin disclosed to Dr. Ing the contents of a letter he had received from the FAPTC explaining why she had not been promoted. That same day, Dr. Ing met with and received a letter from Dr. Huw Thomas, the Dean of TUDSM, further discussing the denial and indicating his understanding that Dr. Ing would appeal the FAPTC's decision. Three days later, Dr. Ing wrote a rebuttal letter to Dean Thomas disagreeing with the

A-5

FAPTC's decision and explaining why she believed she had satisfied the Educational Leadership Area of Excellence. She took particular issue with the FAPTC's purported definition of "course director." On January 9, 2019, Dr. Ing met with Dean Thomas, Dr. Trotman, Ms. Bankowski, and her new department chair, Dr. Andrea Zandona, and requested a more detailed explanation of the reasons why her application had been denied.

A few days later, Dean Thomas sent Dr. Ing another letter discussing her dossier's shortcomings in detail. Dean Thomas reiterated to Dr. Ing that "you did not meet the criteria in your designated secondary *Area of Excellence*, Educational Leadership." Jan. 15, 2019 Letter (Dkt # 44-39) at 2. He added that "[t]he supporting documents provided for [the Educational Leadership] section were somewhat inaccurate and limited in breadth and scope." *Id.* He outlined three examples of the deficiencies the FAPTC had identified:

- "There was lack of evidence in the area of Tufts academic and administrative leadership roles – i.e. chair or co-chair of a committee; FAPTC felt there were few if any contributions that would constitute as leadership." *Id.*
- "Despite organizing a 3-hour workshop, FAPTC deemed there was a deficiency in your lack of course directorship; a one-time 3-hour workshop does not compare to a 3, 6 or 9-month course with multiple faculty reporting to you, course grades, etc." *Id.*
- "Many of the educational leadership roles described in your dossier are solitary presentations and not part of organizing a

A-6

large local or national meeting and were targeted towards a very narrow audience." *Id*. at 3.

Dr. Ing did not appeal the decision.

## C.    2019 Promotion Cycle

When Dr. Zandona replaced Dr. Rankin, she made efforts to meet with each of the faculty in her department.    She first met with Dr. Ing on December 13, 2018.    At this meeting, Dr. Ing informed Dr. Zandona of her 2017 sexual harassment complaint, and also her denial of a promotion during the 2018 cycle.    Dr. Ing next saw Dr. Zandona at the January 9, 2019, meeting.    Dr. Zandona told Dr. Ing that should she reapply, "I most likely am not going to promote you."    Deposition Tr. of Dr. Ing (Dkt # 49-12) at 13 (Ing Tr.).[1]    In an email later that day to Ms. Bankowski, copying the Provost, Dr. Ing wrote, "I was quite shocked today at the meeting where I was told to meet with the new chairperson and was told that she may not write a positive letter in support like Dr. Rankin did."    Jan. 9, 2019 Email (Dkt # 49-8) at 2.

Throughout the spring, summer, and fall of 2019, Dr. Zandona met with Dr. Ing several times and corresponded with her repeatedly explaining

---

[1] Dr. Zandona denies having said this or anything like it, and Dean Thomas, Dr. Trotman, and Ms. Bankowski professed to having no recollection of Dr. Zandona making the remark.

7

A-7

how she could go about improving her dossier. The first such meeting occurred on March 21, 2019, at which Dr. Zandona asked Dr. Ing how often she was attending sexual harassment therapy. Dr. Ing replied that she was attending once per week, to which Dr. Zandona responded, "You need to go more often." Pls. Interrog. Resps. (Dkt # 49-19) at 4.[2]

Drs. Ing and Zandona met again on May 21, 2019. The next day, Dr. Zandona wrote to Dr. Ing regarding her potential resubmission that "[m]y goal is to be able to support you!" and suggested ways Dr. Ing could improve her dossier. May 22, 2019 Email (Dkt # 44-43) at 2. Dr. Ing implemented some of Dr. Zandona's suggestions but not others. The two met again on October 3, 2019, and Dr. Zandona suggested additional steps Dr. Ing could take to improve her chances with the FAPTC. The two emailed the next day, with Dr. Ing highlighting her accomplishments and attempting to explain why, despite the FAPTC's 2018 decision, she merited promotion. Dr. Zandona wrote that "we need to focus on things that are weighted more heavily on the FAPTC committee. Research projects have [sic] impact as grants and publications, and abstracts are good, but they do not carry the

---

[2] Dr. Zandona denies that this interaction took place. For purposes of summary judgment, the court resolves this factual dispute in favor of Dr. Ing, the non-moving party.

A-8

same weight as a peer reviewed published manuscript." October 4, 2019 Email (Dkt # 44-44) at 4. Dr. Zandona also confirmed that "when I feel you have [] met the criteria to be promoted I will write a supportive letter." *Id.* at 6. In response to Dr. Ing's statement that "[i]f the committee / administration turns down my promotion this will not bode well for you or for me; and it will send a clear message," Dr. Zandona replied, "I am sure you don't want a[n] unsuccessful submission, so let's work together to make[] sure that your submission will be successful." *Id.*

Later in October of 2019, Dr. Zandona notified Dr. Ing that she would not endorse her for full a professorship in the 2019 cycle because she felt that Dr. Ing had not sufficiently strengthened her dossier. The two met to discuss the reasons for Dr. Zandona's decision and discuss a path toward a successful application on November 13, 2019. On November 18, Dr. Ing wrote Dr. Zandona a letter stating that her "accomplishments superseded the guidelines 2 cycles ago" and that she felt "singled out." November 18, 2019 Letter (Dkt # 44-45) at 2. She also complained that Dr. Zandona had not sufficiently supported her as she worked to improve her dossier. Dr. Ing asked Dr. Zandona to point to deficiencies in her dossier compared to those of other instructors who had recently been promoted.

9

A-9

Dr. Zandona replied in a December 9, 2019 letter.   She wrote to Dr. Ing:

> I want to assure you that as your Chair, I do support you.   My support has been exemplified by the various meetings we have had since I became your chair to review and analyze your 2018 promotion denial and to assist you in identifying areas of improvement toward a successful submission.

December 9, 2019 Letter (Dkt # 44-46) at 2.

Dr. Zandona's letter repeated seven previously discussed suggestions to Dr. Ing's dossier: (1) working with other faculty, rather than completing solo projects on the Calibration Committee which Dr. Ing chaired; (2) considering leadership roles in venues of organized dentistry; (3) identifying leadership opportunities in STEM generally; (4) focusing leadership efforts on a specific area of expertise, rather than several at once; (5) submitting work to peer-reviewed publications; (6) continuing to work on both clinical and didactic teaching; and (7) continuing service efforts.   The letter concluded,

> While it is true that I was not prepared to support your submission for promotion in November 2019 because I did not feel you had demonstrated a significant development compared to your last submission in the area of Educational Leadership, this does not mean that I am against your promotion or that I will not work with you towards a successful submission – as described above, I remain committed to doing so.

*Id.* at 3.

10

A-10

Dr. Ing took a medical leave of absence from Tufts beginning in December of 2019. She did not return, and her contract expired in June of 2021.

## DISCUSSION

Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed R. Civ. P. 56(a). A dispute is genuine where "the evidence, viewed in the light most flattering to the nonmovant, would permit a rational factfinder to resolve the issue in favor of either party." *Joseph v. Lincare, Inc.*, 989 F.3d 147, 157 (1st Cir. 2021), quoting *Medina-Muñoz v. R.J. Reynolds Tobacco Co.*, 896 F.2d 5, 8 (1st Cir. 1990). "Facts are material when they have the 'potential to affect the outcome of the suit under applicable law.'" *Cherkaoui v. City of Quincy*, 877 F.3d 14, 23 (1st Cir. 2017), quoting *Sánchez v. Alvarado*, 101 F.3d 223, 227 (1st Cir. 1996). "To succeed, the moving party must show that there is an absence of evidence to support the nonmoving party's position." *Rogers v. Fair*, 902 F.2d 140, 143 (1st Cir. 1990). The burden then shifts to the nonmoving party to "adduce specific, provable facts demonstrating that there is a triable issue." *Id.*

11

A-11

## A.  Discrimination Claims

Dr. Ing brings claims of sex discrimination under Massachusetts General Laws chapter 151B, Title VII, and Title IX.  Because there is no direct evidence of discriminatory intent, the *McDonnell-Douglas* burden-shifting framework governs all three claims.  *See Prescott v. Higgins*, 538 F.3d 32, 40 (1st Cir. 2008) (applying *McDonnell-Douglas* standard to claims under Title VII and chapter 151B); *Lipsett v. Univ. of P.R.*, 864 F.2d 881, 896-898 (1st Cir. 1988) (holding Title VII standards apply to Title IX discrimination claims).  A plaintiff establishes a *prima facie* case of sex discrimination by showing that "(1) she is a member of a protected class, (2) she was qualified for an open position for which she applied, (3) she was rejected, and (4) someone possessing similar qualifications filled the position instead."  *Ingram v. Brink's, Inc.*, 414 F.3d 222, 230 (1st Cir. 2005).  If the plaintiff makes that showing, the burden shifts to the employer to articulate a legitimate, nondiscriminatory reason for the adverse employment action.  *See Forsythe v. Wayfair Inc.*, 27 F.4th 67, 82 (1st Cir. 2022).  The burden then shifts back to the plaintiff to show by a preponderance of the evidence that the employer's articulated reason is a pretext for discrimination.  *See Theidon v. Harv. Univ.*, 948 F.3d 477, 496 (1st Cir. 2020).

12

A-12

Tufts has produced a raft of credible evidence establishing that Dr. Ing was not qualified for a promotion because she did not meet the criteria for her self-chosen Area of Excellence: Educational Leadership.   Tufts points to the uniform conclusions of the FAPTC members, Dr. Zandona, and Dr. Ing's outside advisors, Dr. Blanco and Dr. Wolff, that she was not qualified for a promotion.   Dr. Ing argues in conclusory terms that there is "no question" that she was qualified, relying primarily on the summary of her qualifications from her Charge of Discrimination.   Opp'n (Dkt # 48) at 8-9, 21.   This summary describes certain teaching accolades and Dr. Ing's role within TUDSM, but does not address the Educational Leadership criteria.   These criteria include the gaps that various decisionmakers identified in Dr. Ing's application, such as her failure to qualify as a course director or to take on leadership roles either at Tufts or in external dental organizations.   *See* TUDSM Faculty Handbook (Dkt # 44-25) at 7.   No reasonable factfinder could, on the evidence produced, conclude that Dr. Ing was qualified for promotion.

Even if Dr. Ing could surmount the qualification hurdle, Tufts would be entitled to summary judgment because of the absence of any showing of pretext.    Tufts   identifies   Dr.   Ing's   lack   of   qualifications   as   a

13

A-13

nondiscriminatory reason for its decision to deny her a promotion.   Dr. Galburt and Dr. Amato each cited Dr. Ing's failure to satisfy the Educational Leadership Area of Excellence as their reason for voting against her promotion, and Dean Thomas and Dr. Zandona offered the same rationale.

Dr. Ing offers no evidence that her gender played a role in TUDSM's decision not to promote her, let alone that its proffered reason for the denial was designed to conceal discriminatory animus.   She points to certain purported irregularities in the FAPTC process as evidence of pretext.   In some cases, an employer's disparate application of policies to support an adverse employment action may establish pretext.   *See Miceli v. JetBlue Airways Corp.*, 914 F.3d 73, 84 (1st Cir. 2019).   For example, an employee may demonstrate pretext through evidence that "the adverse action departed from a clearly delineated policy" or "the employer applied such a policy differently to similarly situated employees."   *Id.*

Dr. Ing cites as procedural irregularities: (1) the absence of minutes from the meetings at which the FAPTC discussed her application; (2) Dr. Trotman's request that Dr. Amato review Dr. Ing's dossier a second time after the FAPTC had voted against her promotion; (3) the fact that Dean Thomas's September 20, 2018 denial letter went through five drafts, each

14

A-14

with more negative language than the last; and (4) the five-month gap between the FAPTC's vote and TUDSM's notification to her that it had denied her promotion request.    However, "there is no indication that th[ese] perceived procedural irregularit[ies] w[ere] relevant to or had any bearing on" Tufts's decision not to promote Dr. Ing.    *Theidon*, 948 F.3d at 500. The absence of minutes, assuming that there was a policy of taking minutes at FAPTC meetings, represents a "bare showing of administrative error." *Miceli*, 914 F.3d at 84.    It would require speculation to infer that the minutes — in contrast to the testimony and notes of the participants — would have contained evidence of discrimination.[3]    Dr. Ing does not identify a policy that the remaining irregularities deviated from, nor does she show that the FAPTC process was handled differently for other applicants.    Because

_____

[3] Dr. Ing has not established that Tufts spoiled the meeting minutes. To prevail on a spoliation claim, a party must "proffer evidence sufficient to permit the trier to find that the target knew of (a) the claim (that is, the litigation or the potential for litigation), and (b) the document's potential relevance to that claim."    *Testa v. Wal-Mart Stores, Inc.*, 144 F.3d 173, 177 (1st Cir. 1998).    Further, "the party urging that spoliation has occurred must show that there is evidence that has been spoiled (i.e., destroyed or not preserved)."    *Gomez v. Stop & Shop Supermarket Co.*, 670 F.3d 395, 399 (1st Cir. 2012).    While there is competing evidence regarding whether the meeting minutes existed in the first place, Dr. Ing has failed to show that Tufts destroyed or failed to preserve them with knowledge of their relevance to her prospective claims.

A-15

Dr. Ing has failed to show that she was otherwise qualified for promotion or that Tufts's explanation was a pretext for discrimination, the court will enter summary judgment for Tufts on the discrimination claims.[4]

## B.    Retaliation Claims

"A retaliation claim requires a showing that (1) the plaintiff engaged in protected conduct; (2) she was subjected to an adverse employment action; and (3) there was a causal connection between the first and second elements." *Valentin-Almeyda v. Municipality of Aguadilla*, 447 F.3d 85, 94 (1st Cir. 2006); *see also Theidon*, 948 F.3d at 505 (applying the same standard to Title IX claim).   The parties only contest the third element of Dr. Ing's *prima facie* case.   Where an employee relies upon a chronological relationship between the protected activity and the adverse employment action to support causation, "the temporal proximity must be very close."

---

[4] To the extent that Dr. Ing asserts a Title IX claim based on the alleged bias of the OEO investigator who examined her sexual harassment complaint against Dr. Varania, that claim is also dismissed.   An employer discharges its duty to investigate a complaint of harassment if it conducts a "reasonable investigation," regardless of whether the findings substantiate the accusations. *Forsythe*, 27 F.4th at 73.   Here, it is undisputed that Ms. Bogran-Acosta interviewed Dr. Vanaria, Dr. Ing, and Dr. Ing's supervisor before concluding that no harassment had taken place.   Tufts nonetheless accommodated Dr. Ing by changing Dr. Vanaria's schedule and swipe access. Whatever the tone of Ms. Bogran-Acosta's communications with Dr. Ing, Tufts's response to Dr. Ing's sexual harassment complaint was reasonable.

16

A-16

*Murray v. Warren Pumps, LLC*, 821 F.3d 77, 87-88 (1st Cir. 2016). Under Title VII and chapter 151B, the court as a rule applies a but-for standard of causation, while the standard under Title IX is undecided: some courts apply the but-for standard while others use a "substantial and motivating factor" standard. *Id.* at 506. Here, the result is the same under either test, as Dr. Ing has failed to establish that her complaint of sexual harassment led to TUDSM's denial of her application for promotion.

In 2018, the decision whether to promote Dr. Ing to full professor belonged to the FAPTC. Tufts submits unrefuted evidence that no member of the FAPTC knew of Dr. Ing's 2017 sexual harassment complaint. Thus, her complaint could not have been a but-for cause of the FAPTC's decision to reject her application. *See Medina-Rivera v. MVM, Inc.*, 713 F.3d 132, 139 (1st Cir. 2013).

In 2019, Dr. Ing did not reapply for promotion because Dr. Zandona declined to provide a letter of endorsement. Tufts has shown that Dr. Zandona arrived at Tufts more than a year after Dr. Ing initiated her complaint, that Dr. Zandona never knew or met Dr. Vanaria, and that Dr. Zandona worked with Dr. Ing for at least six months to improve her dossier.

Dr. Ing relies on her testimony that Dr. Zandona told her at the January

17

A-17

9, 2019, meeting that "I most likely am not going to promote you," Ing Tr. at 13, and that Dr. Zandona commented that she should attend sexual harassment therapy more often in March of 2019.   Dr. Ing's recollection of the former remark is undercut by her contemporaneous email stating that Dr. Zandona had told her that she "may not write a positive letter in support like Dr. Rankin did." Jan. 9, 2019 Email at 2.   Moreover, neither comment establishes that Dr. Zandona associated Dr. Ing's sexual harassment complaint with her resubmission, and both comments occurred long before Dr. Zandona declined to endorse Dr. Ing's promotion.   Dr. Zandona continued advising Dr. Ing for six months after the second comment (and ten months after she learned of Dr. Ing's complaint), and her advice repeatedly consisted of ways to address the weaknesses that the FAPTC identified in Dr. Ing's dossier.   The court will therefore enter summary judgment for Tufts on Dr. Ing's retaliation claims.

## ORDER

For the foregoing reasons, Tufts's motion for summary judgment is <u>ALLOWED</u>.   The Clerk will enter judgment for Tufts and close the case.

SO ORDERED.

/s/ Richard G. Stearns
UNITED STATES DISTRICT JUDGE

18

A-18

# UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

Melissa Ing

      Plaintiff

      v.                                    CIVIL ACTION 1:21-10032-RGS

Tufts University

      Defendant

## JUDGMENT

<u>STEARNS, D.J.</u>

In accordance with the court's Memorandum and Order issued on October 13, 2022, granting defendant's motion for summary judgment, it is hereby ORDERED:

Judgment entered for Tufts University.


<u>October 13, 2022</u>                          By the court,
Date                                            /s/ Arnold Pacho
                                                Deputy Clerk

A-19

| | | |
|---|---|---|
| | | 18, # 5 Exhibit FAPTC agendas, # 6 Exhibit Course Director, # 7 Exhibit Qualtrix chart, # 8 Exhibit Ing 1-9-18 email, # 9 Exhibit Ing 10-11-18 email, # 10 Exhibit Disapproval letters-transmittals, # 11 Exhibit Discrimination charge, # 12 Exhibit Ing excerpts, # 13 Exhibit Bogran-Acosta excerpts, # 14 Exhibit Bankowski excerpts, # 15 Exhibit Trotman excerpts, # 16 Exhibit Thomas excerpts, # 17 Exhibit Amato excerpts, # 18 Exhibit Zandona excerpts, # 19 Exhibit Int Answer excerpts, # 20 Exhibit Arsenault excerpts)(Notis, Mitchell) (Entered: 08/12/2022) |
| 08/15/2022 | 50 | Joint MOTION for Leave to File *Reply and Sur-Reply Briefs Concerning Defendant Tufts University's Motion for Summary Judgment* by Tufts University.(Sweeney, Douglas) (Entered: 08/15/2022) |
| 08/16/2022 | 51 | Judge Richard G. Stearns: ELECTRONIC ORDER entered granting 50 Motion for Leave to File Document. Tufts may file a 5-page reply brief by August 26, 2022. Dr. Ing may file a 5-page sur-reply by September 9, 2022. Counsel must include - Leave to file granted on (date of order)- in the caption of the document. (RGS, law3) (Entered: 08/16/2022) |
| 08/26/2022 | 52 | REPLY to Response to 42 MOTION for Summary Judgment filed by Tufts University. (Attachments: # 1 Exhibit A - Sweeney Decl.)(Sweeney, Douglas) (Entered: 08/26/2022) |
| 09/09/2022 | 53 | REPLY to Response to 42 MOTION for Summary Judgment *(Plaintiff's Response to Defendant's Reply Brief)* filed by Melissa Ing. (Notis, Mitchell) (Entered: 09/09/2022) |
| 10/13/2022 | 54 | Judge Richard G. Stearns: ORDER entered granting 42 Motion for Summary Judgment. The court ALLOWS Tufts's motion for summary judgment. The clerk will enter judgment for Tufts and close the case. (RGS, law3) (Entered: 10/13/2022) |
| 10/13/2022 | 55 | Judge Richard G. Stearns: ORDER entered. JUDGMENT entered for Tufts University. (Pacho, Arnold) (Entered: 10/13/2022) |
| 11/09/2022 | 56 | MOTION to Alter Judgment by Melissa Ing.(Notis, Mitchell) (Entered: 11/09/2022) |
| 11/09/2022 | 57 | MEMORANDUM in Support re 56 MOTION to Alter Judgment filed by Melissa Ing. (Notis, Mitchell) (Entered: 11/09/2022) |
| 11/22/2022 | 58 | Opposition re 56 MOTION to Alter Judgment filed by Tufts University. (Sweeney, Douglas) (Entered: 11/22/2022) |
| 11/28/2022 | 59 | Judge Richard G. Stearns: ELECTRONIC ORDER entered denying 56 Motion to Alter Judgment.<br><br>Dr. Ing's motion to alter or amend judgment is DENIED. The court may grant a motion under Rule 59(e) only where "the movant shows a manifest error of law or newly discovered evidence." *Kansky v. Coca-Cola Bottling Co. of New Eng.*, 492 F.3d 54, 60 (1st Cir. 2007). A motion to alter judgment is not "a mechanism to regurgitate old arguments previously considered and rejected." *Biltcliffe v. CitiMortgage, Inc.*, 772 F.3d 925, 930 (1st Cir. 2014) (internal quotation marks omitted). Dr. Ing argues that the court erred in granting summary judgment to Tufts on her retaliation claims because the court |

| | | |
|---|---|---|
| | | failed to consider that Dr. Zandona knew nothing of Dr. Ing's qualifications when, in January of 2019, Dr. Zandona told Dr. Ing that she most likely would not promote her. The court fully considered this statement and the circumstances surrounding it in its summary judgment opinion. *See* Order (Dkt # 54) at 7, 18. Dr. Ing's contention that the court should have placed greater weight on one fact relevant to the statement's import does not meet the standard for alteration of judgment. (RGS, law3) (Entered: 11/28/2022) |
| 12/23/2022 | 60 | NOTICE OF APPEAL as to 55 Judgment, 59 Order on Motion to Alter Judgment,,,,, 54 Order on Motion for Summary Judgment by Melissa Ing Filing fee: $ 505, receipt number AMADC-9643995 Fee Status: Not Exempt. NOTICE TO COUNSEL: A Transcript Report/Order Form, which can be downloaded from the First Circuit Court of Appeals web site at http://www.ca1.uscourts.gov MUST be completed and submitted to the Court of Appeals. **Counsel shall register for a First Circuit CM/ECF Appellate Filer Account at http://pacer.psc.uscourts.gov/cmecf. Counsel shall also review the First Circuit requirements for electronic filing by visiting the CM/ECF Information section at http://www.ca1.uscourts.gov/cmecf. US District Court Clerk to deliver official record to Court of Appeals by 1/12/2023. (Notis, Mitchell) (Entered: 12/23/2022)** |
| 12/27/2022 | 61 | Certified and Transmitted Abbreviated Electronic Record on Appeal to US Court of Appeals re 60 Notice of Appeal. (Paine, Matthew) (Entered: 12/27/2022) |
| 01/03/2023 | 62 | USCA Case Number 23-1030 for 60 Notice of Appeal, filed by Melissa Ing. (Paine, Matthew) (Entered: 01/03/2023) |

| PACER Service Center | | |
|---|---|---|
| **Transaction Receipt** | | |
| 03/02/2023 14:34:34 | | |
| **PACER Login:** | MitchNotis | **Client Code:** | |
| **Description:** | Docket Report | **Search Criteria:** | 1:21-cv-10032-RGS |
| **Billable Pages:** | 7 | **Cost:** | 0.70 |

A-21