No. 23-1030

_____

## United States Court of Appeals For
## the First Circuit

_____

MELISSA ING,

*Plaintiff – Appellant,*

v.

TUFTS UNIVERSITY,

*Defendant – Appellee.*

_____

On Appeal from a Judgment of the
United States District Court for the District of Massachusetts

_____

## BRIEF OF DEFENDANT-APPELLEE
## TUFTS UNIVERSITY

_____

Jeremy M. Sternberg (No. 14507)
*jeremy.sternberg@hklaw.com*
Miriam J. McKendall (No. 17793)
*miriam.mckendall@hklaw.com*
Douglas R. Sweeney (No. 1206274)
*douglas.sweeney@hklaw.com*
HOLLAND & KNIGHT LLP
10 St. James Avenue
Boston, MA 02116
(617) 523-2700

## DISCLOSURE STATEMENT

Defendant-Appellant Tufts University, by its undersigned counsel, states that it has no parent corporation, and that there is no publicly-held company that owns ten percent or more of it.

# Table of Contents

TABLE OF AUTHORITIES ................................................................. V

DEFENDANT-APPELLEE TUFTS UNIVERSITY'S  STATEMENT OF ISSUES ........................................................................................ 1

DEFENDANT-APPELLEE TUFTS UNIVERSITY'S STATEMENT OF THE CASE .......................................................................................... 2

I.  DR. ING'S INTERNAL REPORT OF SEXUAL HARASSMENT ............................. 3

    A.  A Junior Faculty Member Asks Dr. Ing Out on One Date ...................... 3

    B.  TUSDM's Reasonable Investigation into Dr. Ing's Report of Sexual Harassment Finds No Sexual Harassment Occurred ............................ 4

    C.  TUSDM Accommodates Dr. Ing's Requests Even Though the Investigation Found No Sexual Harassment ........................................... 5

II.  DR. ING APPLIES FOR PROMOTION TO FULL PROFESSOR ........................... 5

    A.  The TUSDM Promotion Process and the FAPTC ................................... 5

    B.  Dr. Ing Applies for Promotion in 2018 .................................................. 7

    C.  Dr. Ing's External Reviewers Express Skepticism About Her Promotion Prospects ............................................................................. 8

    D.  No FAPTC Members Knew of Dr. Ing's 2017 Report of Sexual Harassment .............................................................................................. 9

    E.  After Careful Evaluation, No FAPTC Member Votes in Favor of Dr. Ing's Promotion to Full Professor .......................................................... 10

    F.  Dr. Ing is Informed her Promotion was Denied ................................... 13

    G.  There is No Evidence that the FAPTC considered Dr. Ing's Gender or Sexual Harassment Report when it Determined She Did Not Meet the Criteria for Promotion ......................................................................... 16

    H.  Dr. Ing Refuses to Accept the Guidance of her Department Chair on How to Improve her Qualifications for Promotion ................................. 17

    I.  Dr. Ing Voluntarily Leaves TUSDM and Does Not Return ................... 22

STANDARD OF REVIEW .................................................................. 22

SUMMARY OF THE ARGUMENT ....................................................... 24

ARGUMENT ................................................................................... 25

I.  THE GRANT OF SUMMARY JUDGMENT SHOULD BE AFFIRMED ................... 25

A.    Dr. Ing's Claims for Discrimination Fail Because She has Shown No Connection Between Her Gender and Her Promotion Denial; She was Not Qualified for the Promotion She Sought; and She Cannot Show Pretext ...................................................................................25

1.    Dr. Ing's Gender Discrimination Claims Fail Because There is No Evidence Connecting Her Gender to Any Adverse Action ................27

2.    Dr. Ing Cannot Establish a Prima Facie Case Because She Cannot Not Show that She Attained "Superior Accomplishment" in the "Educational Leadership" Area of Excellence....................................27

3.    Dr. Ing Cannot Show that the Reasons for Promotion Denial were Pretextual.........................................................................................30

    a.    There is No Evidence of Pretext ........................................................31

    b.    Any Alleged Irregularities with the FAPTC's Process Do Not Amount to Pretext.....................................................................33

    c.    The Stated Reasons for the Denial of Dr. Ing's Promotion have Remained Consistent .......................................................37

B.    Dr. Ing's Retaliation Claims Fail Because There is No Causal Connection Between her Sexual Harassment Report and the Decisions to Deny her Promotion...........................................................39

1.    There is No Connection Between Dr. Ing's Sexual Harassment Report and Dr. Zandona's Decision to Not Endorse her for Promotion ......................................................................................41

    a.    Dr. Ing's Contemporaneous Email Contradicts the Allegation Upon Which her Retaliation Claims Are Based............................41

    b.    The Undisputed Facts Show that Dr. Zandona Worked Diligently with Dr. Ing to Help her Improve her Promotion Prospects...........42

2.    Dr. Ing Cannot Show that Dr. Zandona's Stated Reasons for her Actions were Pretextual. ....................................................................48

II.    THE DENIAL OF THE MOTION TO ALTER SHOULD BE AFFIRMED .................48

CONCLUSION ......................................................................................................49

iv

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Ahern v. Shinseki*,
629 F.3d 49 (1st Cir. 2010)..................................................23

*Brown v. Tr. of Brown Univ.*,
891 F.2d 337 (1st Cir. 1989).............................................24, 40

*Bulwer v. Mount Auburn Hosp.*,
46 N.E.3d 24 (Mass. 2016)................................................26

*Carroll v. Joint Apprentice & Training Tr. Fund*,
No. CIV.A. 07-CV-10416-R, 2009 WL 57541 (D. Mass. Jan. 8,
2009) ......................................................................27

*Fields v. Clark Univ.*,
966 F.2d 49 (1st Cir. 1992)............................................*passim*

*Franchina v. City of Providence*,
881 F.3d 32 (1st Cir. 2018)................................................23

*Frazier v. Fairhaven Sch. Comm.*,
276 F.3d 52 (1st Cir. 2002)...........................................39, 40

*Gu v. Bos. Police Dep't*,
312 F.3d 6 (1st Cir. 2002)................................................26

*Guadalupe-Báez v. Pesquera*,
819 F.3d 509 (1st Cir. 2016).............................................23

*Jackson v. Harvard Univ.*,
721 F. Supp. 1397 (D. Mass. 1989).................................31, 39

*Johnson v. Univ. of P.R.*,
714 F.3d 48 (1st Cir. 2013)...........................................23, 26

*Mack v. Great Atl. & Pac. Tea Co.*,
871 F.2d 179 (1st Cir. 1989).............................................47

*Medina-Rivera v. MVM, Inc.*,
   713 F.3d 132 (1st Cir. 2013)................................................................40

*Miceli v. JetBlue Airways Corp.*,
   914 F.3d 73 (1st Cir. 2019)..................................................................40

*Mole v. Univ. of Mass.*,
   814 N.E.2d 329 (Mass. 2004)..............................................................40

*Morales v. A.C. Orssleff's EFTF*,
   246 F.3d 32 (1st Cir. 2001)..................................................................42

*Mulvihill v. Top-Flite Golf Co.*,
   335 F.3d 15 (1st Cir. 2003)..................................................................23

*Palmer v. Champion Mortg.*,
   465 F.3d 24 (1st Cir. 2006)..................................................................49

*Pearson v. Massachusetts Bay Transp. Auth.*,
   723 F.3d 36 (1st Cir. 2013)............................................................32, 39

*Ray v. Ropes & Gray LLP*,
   799 F.3d 99 (1st Cir. 2015)............................................................32, 39

*Ray v. Ropes & Gray LLP*,
   961 F. Supp. 2d 344 (D. Mass. 2013) (Stearns, J.), aff'd, 799 F.3d
   99 (1st Cir. 2015) ....................................................................27, 28, 31

*Smith v. F.W. Morse & Co.*,
   76 F.3d 413 (1st Cir. 1996)..................................................................27

*Theidon v. Harvard Univ.*,
   948 F.3d 477 (1st Cir. 2020).........................................................*passim*

*Theidon v. Harvard Univ.*,
   No. 15-CV-10809-LTS, 2018 WL 11026340 (D. Mass. Feb. 28,
   2018), aff'd, 948 F.3d 477 (1st Cir. 2020) ..........................................28

*Univ. of Tex. Sw. Med. Ctr. v. Nassar*,
   133 S. Ct. 2517 (2013)........................................................................40

*Vargas–Figueroa v. Saldaña*,
   826 F.2d 160 (1st Cir. 1987)...........................................................23, 24

*Velez v. Thermo King de Puerto Rico, Inc.*,
  585 F.3d 441 ...................................................................................38

*Verdrager v. Mintz, Levin, Cohn, Ferris, Glovsky & Popeo, P.C.*,
  50 N.E.3d 778 (Mass. 2016) ...........................................................32

**Statutes and Rules**

20 U.S.C. § 1681 ................................................................................24

Fed. R. Civ. P. 59(e)...........................................................................23

M.G.L. c. 151B, § 4 ...........................................................................24

42 U.S.C. §2000e ...............................................................................24

## DEFENDANT-APPELLEE TUFTS UNIVERSITY'S
## STATEMENT OF ISSUES

1. Whether Defendant-Appellee Tufts University[1] ("Tufts") discriminated against Plaintiff-Appellant Dr. Melissa Ing in 2018 on the basis of gender, where all decisionmakers agreed Dr. Ing was not qualified for promotion.

2. Whether Tufts, through Dr. Ing's new department chair, retaliated against Dr. Ing in 2019 because of the internal sexual harassment report Dr. Ing made in 2017 against a junior colleague before that chair was even employed by Tufts (and after that colleague was no longer working at Tufts), where overwhelming evidence and contemporaneous statements showed the chair's unequivocal commitment to helping Dr. Ing achieve promotion.[2]

---

[1] The correct legal name for Tufts University is the Trustees of Tufts College.

[2] Although Dr. Ing includes three issues in her "Statement of Issues," the second and third statements are essentially the same: Whether the District Court erred by granting Tufts summary judgment on Dr. Ing's claim that Tufts (through Dr. Ing's new department chair) retaliated against her.

## DEFENDANT-APPELLEE TUFTS UNIVERSITY'S
## STATEMENT OF THE CASE

The District Court's well-reasoned decision granting Defendant-Appellee Tufts University ("Tufts") summary judgment on all six counts of the complaint filed by Plaintiff-Appellant Dr. Melissa Ing (and its denial of Dr. Ing's motion to alter that judgment) should be affirmed because the undisputed material facts demonstrate that neither Tufts, nor anyone acting on its behalf, discriminated against Dr. Ing based on her gender, nor did anyone retaliate against her for filing an internal report of sexual harassment.

Dr. Ing was an associate professor at Tufts University School of Dental Medicine ("TUSDM"). In 2018, Dr. Ing applied for promotion to full professor. None of the members of the TUSDM Faculty Appointments Promotions and Tenure Committee (the "FAPTC") voted to approve Dr. Ing's application because she did not meet the criteria for promotion. Specifically, Dr. Ing failed to demonstrate the level of "superior accomplishment" in one of the three criteria required for promotion. The criteria she failed to meet was the "Educational Leadership" Area of Excellence, which she selected as part of the promotion application process. In 2019, Dr. Ing's newly arrived department chair, Dr. Andrea Zandona, advised Dr. Ing on ways to address the deficiencies in support of her application for promotion. Dr. Ing did not follow this advice. Consequently, in October 2019, Dr. Zandona

2

declined to endorse Dr. Ing for promotion during the 2019 promotion cycle as Dr. Ing had not made sufficient improvements to warrant such a quick re-application.

Dr. Zandona stated unequivocally that she was committed to supporting Dr. Ing's promotion once Dr. Ing made the suggested improvements to her promotion application. Instead of working to strengthen her dossier and resubmitting it in a later promotion cycle, Dr. Ing took leave from TUSDM in December 2019 and never returned to Tufts.

After filing a charge with the Massachusetts Commission Against Discrimination ("MCAD") in May 2020, Dr. Ing filed this lawsuit in January 2021 alleging that Tufts, through the FAPTC and Dr. Zandona, retaliated against her for making a sexual harassment report in 2017 against a junior faculty member, and discriminated against her because of her gender. As the District Court found, however, the undisputed facts demonstrate that neither the FAPTC nor Dr. Zandona considered anything but Dr. Ing's qualifications and merits when deciding on whether to promote her or to endorse her for promotion, respectively. Accordingly, the District Court's decision should be affirmed.

## I.    Dr. Ing's Internal Report of Sexual Harassment

### A.    A Junior Faculty Member Asks Dr. Ing Out on One Date

In February 2017, Dr. Roland Vanaria, an assistant professor at TUSDM who during his entire tenure was in a more junior position than Dr. Ing, asked Dr. Ing out

on a date. *Joint Appendix* ("JA") 113, 211. She told Dr. Vanaria that she was "flattered" but declined. JA-113, 211. In March 2017, Dr. Ing joked with her TUSDM division head over email that Dr. Vanaria was behind the nomination she recently received for an award: "I think it's a nomination but it's still v[ery] nice of whoever nominated me. Maybe it was Rollie [Vanaria]. [smiling cat emoji]." JA-213.

### B. TUSDM's Reasonable Investigation into Dr. Ing's Report of Sexual Harassment Finds No Sexual Harassment Occurred

In June 2017, more than four months after Dr. Ing declined Dr. Vanaria's date request, Dr. Ing told her TUSDM division head that Dr. Vanaria had sexually harassed her. JA-116. The division head promptly reported Dr. Ing's allegations to Tufts' Office of Equal Opportunity ("OEO"), which swiftly launched an investigation. JA-142, 215. OEO assigned Alida Bogran-Acosta, a former employment attorney and counsel for the MCAD, to investigate Dr. Ing's report. JA-140-142. Ms. Bogran-Acosta interviewed (separately) Dr. Ing, Dr. Vanaria and Dr. Ing's division head. JA-143. She found that Dr. Vanaria had asked Dr. Ing on a date and had made certain comments to Dr. Ing over a period of years, including remarking that Dr. Ing's lab coat "must have been woven by angels" and asking Dr. Ing if she wanted to "do some monkey business." JA-144-145. Based on her investigation, Ms. Bogran-Acosta concluded that Dr. Vanaria's conduct was not severe or pervasive and did not violate Tuft's sexual harassment policy. JA-145.

**C.      TUSDM Accommodates Dr. Ing's Requests Even Though the Investigation Found No Sexual Harassment**

Even though the Tufts' OEO investigation found that Dr. Vanaria had not sexually harassed Dr. Ing, TUSDM addressed Dr. Ing's requests to limit her contact with him.  To that end, the division head adjusted the schedule in August 2017 to address Dr. Ing's request that she and Dr. Vanaria not be scheduled to work together. JA-224.  And when the schedule was adjusted during October of 2017 to account for Dr. Ing's planned absence, the schedule was switched back after her return (*i.e.*, Dr. Ing and Dr. Vanaria were not scheduled to work in close proximity).  JA-230-231. As another example of TUSDM being responsive to Dr. Ing, TUSDM removed Dr. Vanaria's swipe card access to a conference room located near Dr. Ing's office in October 2017 at Dr. Ing's request. JA-228.  By no later than mid-October 2017, Dr. Vanaria was not able to enter Dr. Ing's office area nor was he ever scheduled to work in close proximity to her.  JA-117, 230.  Dr. Ing's testimony confirms that she last saw Dr. Vanaria in January or February 2018 in a TUSDM parking lot.  JA-117.

**II.    Dr. Ing Applies for Promotion to Full Professor**

**A.      The TUSDM Promotion Process and the FAPTC**

TUSDM instructors do not need to receive a certain rank or tenure in order to remain employed.  JA-164, 246.  In fact, many faculty members spend their entire careers at TUSDM as assistant or associate professors and never attain the rank of

full professor.  JA-131, 164.  In other words, this is not a case about tenure; TUSDM does not have an "up-or-out" promotion system.  JA-164, 246.

In 2017 TUSDM updated its guidelines and criteria for promotion to increase the requirements concerning academic rigor.  JA-164, 246.  The new guidelines, which went into effect in November 2017, describe the type of content and materials to be included in a faculty member's application for promotion, known as a dossier. JA-246.  Under the new guidelines, the dossier of faculty members seeking promotion must demonstrate that they have attained the level of "superior accomplishment" in the published criteria for their Areas of Excellence.  JA- 253. One of the three Areas of Excellence—Service, Citizenship, and Professionalism— is mandatory for all applicants.  JA-254.  The other two Areas of Excellence may be self-selected by the faculty members from four choices: (1) Teaching; (2) Educational Leadership; (3) Scholarship, Investigation, and Discovery; and (4) Clinical Instruction, Expertise, and Innovation.  JA-254.  By self-selecting two of these four Additional Areas of Excellence, the faculty members seeking promotion are in effect declaring that they have demonstrated the level of "superior accomplishment" in those two substantive areas.  JA-254.  In addition, under the guidelines, faculty members must receive their department chair's endorsement to be considered before proceeding to submit their dossier to the FAPTC.  JA-79.  The FAPTC is responsible for reviewing submitted dossiers and evaluates them against

the published criteria for the self-selected Areas of Excellence to determine if the candidate has indeed shown "superior accomplishment" in those two self-selected areas and the mandatory third Area of Excellence.  JA-186, 246.

### B.    Dr. Ing Applies for Promotion in 2018

In November 2017, Dr. Ing decided to apply to become a full professor.  JA-119.  In January 2018, Dr. Ing met with her then department chair, Dr. Charles Rankin, and the Associate Dean for Faculty Development, Dr. Carroll Ann Trotman.  JA-121.  (Dr Trotman was also a non-voting member of the FAPTC.)  JA-171.  Dr. Trotman typically advised promotion candidates to spend a year, or, at the very least six months, compiling their dossiers before applying for promotion, and gave Dr. Ing this same advice.  JA-170.  Dr. Ing did not follow this advice.  Instead, Dr. Ing submitted her dossier on February 28, 2018, less than four months after she began compiling it.  JA-120-121.  Dr. Ing self-selected "Teaching" and "Educational Leadership" as her Areas of Excellence for the FAPTC to review and evaluate as to whether she achieved and demonstrated "superior accomplishment" in those areas.[3]  JA-246.

---

[3] Dr. Charles Rankin provided Dr. Ing with an endorsement letter necessary for her to proceed with submitting her application to the FAPTC and stepped down as Dr. Ing's department chair several months later, in October 2018.  JA-122, 148.

**C.    Dr. Ing's External Reviewers Express Skepticism About Her Promotion Prospects**

During early 2018, Dr. Ing sought the views of professionally established educators external to TUSDM regarding her dossier and promotion candidacy.  JA-120.  One of these outside educators was Dr. Maria Blanco, the Associate Dean for Faculty Development at the Tufts University School of Medicine, to whom Dr. Ing emailed her CV on January 16, 2018.  JA-120, 276-277.  In her very first reply in this email exchange, Dr. Blanco expressed her doubts about Dr. Ing's promotion prospects: "[M]y guess is that you might need more scholarship to go for a professorship."  JA-276.  Dr. Blanco continued to express to Dr. Ing her concern about Dr. Ing's insufficient qualifications and stated that "I think you need to expand your impact a bit more for a professorship."  JA-275.  Further, Dr. Blanco advised Dr. Ing to "not rush" to apply for promotion.  JA-274.

Also, in January 2018, Dr. Ing emailed Dr. Mark Wolff, who was then a professor at New York University College of Dentistry and who is now Dean of the University of Pennsylvania School of Dental Medicine.  JA-279, 282.  Dr. Wolff replied, "Looked through your CV and it is impressive.  Unfortunately, it would not pass the Professor process [at] NYU Dental and would be kicked back downtown."  JA-279.  Dr. Ing again contacted Dr. Wolff with her updated CV in December 2018, after her promotion had been denied (which is discussed *infra*).  JA-283.  Dr. Wolff replied that he "could not support a promotion to Professor."  JA-282.  Dr. Ing

8

replied and asked Dr. Wolff to review TUSDM's promotion criteria.  JA-281-282.

Dr. Wolff said he would review the criteria but stated "I can not [*sic*] say that you

would be promoted in either of my institutions."  JA-281  Dr. Ing persisted and asked

Dr. Wolff to write her a letter of support, to which Dr. Wolff stated "I am sorry but

I can not [*sic*] provide a letter of support."  JA-280.

### D.    No FAPTC Members Knew of Dr. Ing's 2017 Report of Sexual Harassment

At all times relevant to Dr. Ing's promotion application, the FAPTC that

evaluated and voted on Dr. Ing's application for promotion was comprised of seven

voting members, including a female chair[4] and one non-voting member (Dr.

Trotman).  JA-171-174.  There is no evidence that any member of the FAPTC

considered, or even knew of, Dr. Ing's 2017 sexual harassment report against Dr.

Vanaria.[5]  JA-172, 182, 187-188, 200, 247.  In addition, there is no evidence that

anyone on the FAPTC had more than a passing acquaintance with Dr. Vanaria (if

even that), and several members did not know Dr. Vanaria at all.  JA-130, 180, 194,

---

[4] Dr. Carole Ann Palmer was the chair of the FAPTC until the summer of 2018, when Dr. Maria Papageorge took over as chair.  JA-245, 194.  Minutes of the FAPTC meetings were not kept when Dr. Palmer was chair.  JA-187.

[5] TUSDM Faculty Affairs Officer Monika Bankowski was the recorder of the FAPTC and knew of Dr. Ing's report against Dr. Vanaria at the time that the FAPTC considered Dr. Ing's application, but there is no evidence that Ms. Bankowski told anyone on the FAPTC about Dr. Ing's report.  JA-200.  Ms. Bankowski testified at deposition that she did not inform anyone on the FAPTC of Dr. Ing's report.  JA-200.

247.  All four individuals connected to the FAPTC who were deposed (Dr. Robert Amato, Dr. Roger Galburt, Dr. Trotman and TUSDM Faculty Affairs Officer Monika Bankowski) testified that Dr. Ing's report against Dr. Vanaria was not discussed by FAPTC members at any time, either at official FAPTC meetings or otherwise.  JA-172, 182, 187-188, 200.  Dr. Carole Ann Palmer, the FAPTC chair at the time, attested to the same in her affidavit.  JA-247.

Further, the detailed, contemporaneous notes that both Dr. Amato and Dr. Galburt kept of their evaluations of Dr. Ing's dossier, and Dr. Bjorn Steffensen's notes for the FAPTC's discussion of Dr. Ing, do not reflect any discussion of Dr. Ing's gender or her report regarding Dr. Vanaria at the FAPTC's meetings.  JA-262-270, 285-290; *Tufts Addendum* ("Tufts Add.") A-013-012.  Rather, these documents make clear the FAPTC's discussion focused solely on the merits of Dr. Ing's dossier. In short, based upon all sources of testimony and documentation, the FAPTC's evaluation of Dr. Ing's candidacy for full professor did not address in any way Dr. Ing's report of sexual harassment and it focused exclusively on the merits of her dossier and the criteria required for promotion.  JA-172, 182, 187-188, 200, 247.

**E.    After Careful Evaluation, No FAPTC Member Votes in Favor of Dr. Ing's Promotion to Full Professor**

When the FAPTC receives a dossier, each member carefully reviews it and one FAPTC member leads the discussion on the applicant's candidacy.  JA-171, 186. Dr. Galburt was the FAPTC member assigned to lead the discussion of Dr. Ing's

10

dossier, and he did so at the FAPTC's March 27, 2018 meeting.  JA-180.  Dr. Galburt believed that Dr. Ing did not qualify for promotion to full professor because Dr. Ing had not met the published criteria for her self-selected "Educational Leadership" Area of Excellence.  JA-180, 183.  Dr. Galburt set forth his conclusion as to Dr. Ing's candidacy in the contemporaneous notes he made during his review of Dr. Ing's dossier in 2018.  JA-285-290.  Dr. Galburt confirmed his assessment in his deposition testimony.  JA-180, 183  In particular, Dr. Galburt observed that Dr. Ing presented herself as a "Course Director" for a workshop that met on only two occasions, as opposed to a semester- or year-long course that met several times a week over a course of months.[6]  JA-181-182, 285-290. Dr. Galburt asked that another FAPTC member present Dr. Ing's dossier at the next meeting to confirm his conclusion that Dr. Ing did not satisfy the promotion criteria.  JA-180. Dr. Amato agreed to do so.  JA-190.

---

[6] Although Dr. Ing is listed as a "Course Director" on a TUSDM form for the "Operative Workshop - Intro to Clinical Materials," that workshop met only twice. JA-292.  Dr. Robert Amato, Dr. Roger Galburt, Dr. Carroll Ann Trotman and Dr. Ing's division head all testified that the length, breadth and rigor of a course are what determines whether an individual is a course director, not whether a clerical form lists an individual as a course director.  JA-173, 181-182, 188-189, 223.  This is illustrated by the fact that Patricia DiAngelis, who was the clerical administrator for the Comprehensive Care Department at TUSDM and who is not a dentist, is listed as the course director on TUSDM forms for the "Geriatric Dentistry" course, which met eight times.  JA-298

Upon reviewing Dr. Ing's dossier to prepare for the April 3, 2018 FAPTC meeting, Dr. Amato reached the same conclusion as Dr. Galburt: Dr. Ing did not meet the criteria for the self-selected "Educational Leadership" Area of Excellence and was not a "course director." JA-192-193, 262-270. In addition, Dr. Amato found Dr. Ing was lacking in meeting the criteria for "Educational Leadership" for several additional reasons: she did not actively participate in any local, state-wide or national organizations related to education, she did not serve in a leadership position at TUSDM, and she did not serve as a chair or co-chair of any Tufts committees, among other deficiencies. JA-264. Dr. Amato's assessment of Dr. Ing's dossier identified inadequacies that were "Required Documentation for Promotion" under the published criteria for the "Educational Leadership" Area of Excellence, including "[w]ritten documentation of active participation (not just membership) in leadership roles, describing roles as related to educational leadership." JA-264, 269. Like Dr. Galburt, Dr. Amato kept contemporaneous notes of his evaluation of Dr. Ing's dossier and they reflect his conclusion that Dr. Ing failed to demonstrate "superior accomplishment" in "Educational Leadership."[7] JA-262-270.

---

[7] Dr. Amato testified that minutes were not kept for any candidates at the FAPTC when Dr. Palmer was chair, which included the March 27, 2018 and April 3, 2018 meetings. JA-187. Dr. Amato further testified that the FAPTC began to keep minutes when Dr. Papageorge became chair, in the summer of 2018. JA-187.

After careful consideration and review of Dr. Ing's dossier under the published promotion criteria, not a single member of the FAPTC voted to approve Dr. Ing for promotion. JA-300. Five members voted to not approve, one abstained, and one voted to table the issue. JA-300.

### F.     Dr. Ing is Informed her Promotion was Denied

Dr. Ing was informed at least four times between September 2018 and January 2019 that her application for promotion was denied and she was informed that the reason for that decision was because she failed to demonstrate "superior accomplishment" in her self-selected "Educational Leadership" Area of Excellence and she was provided examples of how she did not meet that criteria (the "Reasons for Promotion Denial"). JA-89, 126, 302, 305-307, 311-312. The Reasons for Promotion are set forth in detail in a letter from TUSDM Dean Huw Thomas, dated January 15, 2019. JA-311-312. Dr. Ing requested that Dean Thomas provide her this further letter even though she had been previously informed of the Reasons for Promotion Denial as will be discussed *infra*. JA-311. Specifically, the January 15, 2019 letter stated that:

1.     there was a lack of leadership roles in Dr. Ing's dossier ("i.e., chair or co-chair of a committee");

2.     that the "FAPTC deemed there was a deficiency in [Dr. Ing's] lack of course directorship; a one-time 3-hour workshop does not compare to

a 3, 6 or 9-month course with multiple faculty reporting to you, course grades, etc.";

3.    "[m]any of the educational leadership roles described in [Dr. Ing's] dossier are solitary presentations and not a part of organizing a large local or national meeting and were targeted towards a very narrow audience;" and

4.    "[t]he caliber and scope of some aspects of [Dr. Ing's] CV and dossier were felt to not accurately represent the level of expectations that FAPTC Promotion Guidelines dictate for promotion to the rank of Professor." JA-311-312.

These deficiencies with Dr. Ing's promotion application were previously identified by Dr. Amato and Dr. Galburt (and recorded in their contemporaneous notes) and had been communicated to Dr. Ing several times over a series of months. JA-262-270, 285-290, 302, 305-307. Namely, on September 19, 2018, Dr. Trotman and Ms. Bankowski met with Dr. Ing and told her she was not going to be promoted because she did not meet the criteria of the "Educational Leadership" Area of Excellence (*i.e.*, the Reasons for Promotion Denial). JA-126, 302. Further, on September 20, 2018, the FAPTC's denial letter (dated August 8, 2018) was sent to Dr. Rankin, who, as Dr. Ing's department chair, was the customary recipient of such a letter. JA-305-307. This letter stated that the "evidence [Dr. Ing] provided for the *Secondary Area*

14

*of Excellence*, Education Leadership does not meet the level of published criteria for promotion to the rank of Professor" (*i.e.*, the Reasons for Promotion Denial).[8]  JA-305.  Lastly, Dean Thomas sent Dr. Ing a letter on September 20, 2018, which reiterated that Dr. Ing did not meet the "Educational Leadership" Area of Excellence (*i.e.*, the Reasons for Promotion Denial) and offered her an opportunity to appeal the decision.  JA-309

Dr. Ing disagreed with her promotion denial and rejected the advice she received regarding how to improve and resubmit her dossier.  JA-89, 165-166, 302.  For instance, on September 23, 2019, Dr. Ing sent a lengthy "rebuttal" to Dean Thomas' September 20, 2018 letter.  JA-314-318.  In that rebuttal, Dr. Ing insisted that she fulfilled the requirements for promotion and stated that: "Contrary to what is written in [Dean Thomas's September 20, 2018] letter my dossier does not require 'improvement.'"  JA-315.  Dr. Ing's September 23, 2018 letter also claims that she had shown her "paperwork" to "an associate dean at Tufts Medical School who is very familiar with faculty development and promotions" and "an external associate dean at another dental school and from a dean at a second external dental school," and that "[e]ach of these people felt that I had met or exceeded the requirements for promotion to professor."  JA-315.  The evidence shows these statements are, at best,

---

[8] The FAPTC's letter went through a series of drafts over the course of the summer of 2018.  JA-398-405.  While the wording varied, every draft conveyed that Dr. Ing was not being promoted to full professor.  JA-398-405.

15

a gross mischaracterization, or, at worst, simply false.   It appears that the "associate
dean at Tufts Medical School" was Dr. Blanco, and Dr. Wolff was one of the
"external" deans.  As detailed *supra*, neither Dr. Blanco nor Dr. Wolff told Dr. Ing
that she "met or exceeded the requirements for promotion to professor," rather both
expressed doubts about her qualifications and candidacy.

Dr. Ing was informed of her right to appeal the FAPTC's decision on several
occasions but declined to pursue an appeal.  JA-133.

### G.    There is No Evidence that the FAPTC considered Dr. Ing's Gender or Sexual Harassment Report when it Determined She Did Not Meet the Criteria for Promotion

At deposition (after Tufts had turned over all relevant documents to Dr. Ing),
Dr. Ing was asked whether she possessed any evidence that the FAPTC considered
her gender or sexual harassment report in its consideration of her promotion
application.   Dr. Ing could provide no direct or indirect evidence and instead
dissembled and offered speculation.  For example:

> Q.  Do you have any evidence that Dr. Amato's decision on your
> application for promotion to full professor was based on your gender?
> A.  I don't know. Possibly.
> Q.  Well, what's the possibly?
> A.  They're the facts, okay?  It's like there's gender discrimination
> everywhere in academics. We know that. It's written up everywhere. You
> know that. I mean you're in education. You're in education and you fight for
> education law -- I think that's the right way to say it -- and we know that there
> are written articles everywhere about gender bias.  We just know it. It exists.

JA-128.

Ultimately, in regard to all seven voting members of the FAPTC (*i.e.*, Dr. Amato, Dr. Galburt, Dr. Noshir Mehta, Dr. Palmer, Dr. Maria Papageorge, Dr. David Paul, and Dr. Steffensen), Dr. Ing either (1) acknowledged that they did not discriminate against her based on her gender and did not retaliate against her for her sexual harassment report, or (2) was unable to articulate any evidence that they discriminated against her because of her gender or retaliated against her for making a sexual harassment report. JA-128-130.

### H.    Dr. Ing Refuses to Accept the Guidance of her Department Chair on How to Improve her Qualifications for Promotion

Dr. Zandona became Dr. Ing's department chair, replacing Dr. Rankin, on November 1, 2018.  JA-148.  She first met Dr. Ing on December 13, 2018 as part of her effort to meet every faculty member in her department.  JA-150.  During this December 2018 meeting, unprompted, Dr. Ing told Dr. Zandona about her June 2017 sexual harassment report.  JA-132, 150.  Prior to this meeting, Dr. Zandona did not speak with anyone regarding Dr. Ing nor did she know about Dr. Ing's sexual harassment report.  JA-149.  Dr. Ing also told Dr. Zandona during this meeting that she had not been promoted.  JA-150.

On January 9, 2019, Dr. Zandona attended a meeting with Dr. Ing, Dean Thomas, Dr. Trotman and Ms. Bankowski regarding Dr. Ing's promotion denial. JA-152.  Prior to this meeting, Dr. Zandona had not reviewed Dr. Ing's dossier as she had just met her a few weeks prior, had heard only positive things about Dr. Ing, and

17

had not discussed Dr. Ing's qualifications for promotion with anyone. JA-151.

Dr. Ing alleges in this lawsuit, for the first time (almost two years later) that at this January 9, 2019 meeting that Dr. Zandona told her, "I most likely am not going to promote you." JA-89  Dr. Ing first made this assertion in her complaint in this case, filed on January 7, 2021.  JA-89.  There is no contemporaneous evidence of such a statement and Dr. Ing did not make this allegation in the charge she filed with the MCAD, which she signed on May 1, 2020.  Tufts Add. A-0021.

This allegation is completely undercut by Dr. Ing's own contemporaneous email regarding Dr. Zandona's statement.  Mere hours after the January 9, 2019, meeting, Dr. Ing wrote an email to Ms. Bankowski in which she stated that "I was quite shocked today at the meeting where I was told to meet with a new chairperson and was told that she **may not write a positive letter of support like Dr. Rankin did**." JA-392 (emphasis supplied).  As the District Court found below, this emailed statement is at odds with Dr. Ing's allegation, first made in this lawsuit, regarding what Dr. Zandona said during the meeting.  What is described in the January 9, 2019 email is consistent with the testimony of all (except Dr. Ing) who attended the January 9, 2019 meeting.  JA-153, 166, 175-176, 209.  Dr. Zandona denies telling Dr. Ing she was "most likely … not going to promote [her]." JA-153.  Moreover, Ms. Bankowski, Dr. Trotman, and Dean Thomas all testified that they do not recall this supposed remark or anything resembling it.  JA-166, 175-176, 209.

18

To evaluate and further Dr. Ing's candidacy for promotion, Dr. Zandona met with Dr. Ing at least six times over the course of 2019 to discuss her dossier. JA-154, 159, 325, 155-156, 330. She also corresponded in writing with Dr. Ing about her promotion and provided her with specific examples of what she could do to improve her qualifications in order to meet the criteria for promotion. JA-325-326, 328-332.

On March 21, 2019, Dr. Zandona and Dr. Ing met to discuss the content of Dr. Ing's dossier and to "identify what areas she needed to work on so that her next re-submission would be successful." JA-154, 322. Shortly after that meeting, Dr. Ing gave Dr. Zandona a copy of her dossier. JA-322. A few weeks later in April 2019, Dr. Zandona gave Dr. Ing specific feedback about how she could improve her dossier at an in-person meeting. JA-159, 322. On May 21, 2019, Dr. Zandona met with Dr. Ing again to "review quite a few projects and thoughts" and to discuss Dr. Ing's promotion application. JA-325. The following day, Dr. Ing sent Dr. Zandona a long email with additional thoughts, questions and grievances regarding the denial of her promotion in 2018 (prior to Dr. Zandona's becoming chair). JA-325-326. Dr. Zandona wrote back that same day and offered Dr. Ing specific suggestions and examples of how she could strengthen her dossier and her chances for promotion. JA-325-326. In this same email, Dr. Zandona told Dr. Ing, "My goal is to be able to support you!" JA-325. Dr. Zandona and Dr. Ing also met to discuss promotion in

July and also in August of 2019.  JA-133, 155-156.  On numerous occasions between January 2019 to October 2019, Dr. Zandona made concrete and specific suggestions to Dr. Ing regarding how she could improve her dossier and chances for promotion.  *See, e.g.,* JA-154-155, 325-326, 328-332.   Dr. Ing implemented some of these suggestions, but she did not implement others.  JA-150.

Dr. Ing and Dr. Zandona met again on October 3, 2019 to discuss promotion.  JA-330.  The next day Dr. Ing sent Dr. Zandona another long email reiterating her previously expressed grievances with the FAPTC's decision and TUSDM's handling of her promotion denial back in 2018.  JA-330-332.  As she had done throughout 2019, Dr. Zandona replied to Dr. Ing's email with specific suggestions regarding how Dr. Ing could achieve promotion.  JA-330-332.  In this October 4, 2019 email, Dr. Zandona once again stated her unequivocal support for Dr. Ing:

> You are a very valuable member of the department … I am sure you don't want an unsuccessfull [sic] submission, so let's work to makes [sic] sure that your submission will be successful … I think we share the same interests and we have a great potential to some wonderful collaboration  … [W]hen I feel you have [] met the criteria to be promoted I will write a supportive letter.

JA-332.

Later in October 2019, Dr. Zandona informed Dr. Ing that she would not provide the chair's endorsement for her promotion to full professor during the current promotion cycle (which ended in November 2019).  JA-156, 332.  Dr. Zandona explained that "[Dr. Ing] had not completed her dossier from 2018 to 2019.

It did not have enough things that I felt the FAPTC would look at and merit a promotion. She needed to take it further to make sure that she had a strong dossier that would be, you know, a sure shot through the FAPTC committee. I did not want her to have another failed process. I really wanted her to be successful." JA-156. At the time that Dr. Zandona made this decision on her endorsement, she (unlike Dr. Rankin, the prior chair who endorsed Dr. Ing back in 2018) was aware of the deficiencies with Dr. Ing's dossier that had been identified by the FAPTC (*i.e.*, the Reasons for Promotion Denial) and she had personal knowledge of Dr. Ing's continued failure to address those deficiencies during the course of 2019. *See* JA-152, 330-332.  In contrast, Dr. Rankin did not have that same information available to him at the time of his endorsement back in 2018.  *See* JA-372.

Dr. Zandona and Dr. Ing next met on November 13, 2019.  JA-334.  At this meeting, Dr. Ing stated her belief that Dr. Zandona would never support her for promotion, even though Dr. Zandona had just spent the past ten months helping Dr. Ing improve her promotion prospects and had reiterated continuously her support for Dr. Ing throughout the year.  JA-157-158, 332.  Despite Dr. Ing's accusation, Dr. Zandona again set forth a plan to help Dr. Ing achieve promotion at this meeting. JA-158.   Dr. Zandona followed up with a letter, dated December 9, 2019, listing seven ways that Dr. Ing could continue to strengthen her dossier and told Dr. Ing, "Because I agreed [with the FAPTC] that the area of Educational Leadership in your

last submission needed to be strengthened, I suggested identifying opportunities to participate in leadership roles that would more clearly demonstrate your excellence." JA-336-337. In addition, Dr. Zandona stated in this letter that:

> While it is true that I was not prepared to support your submission for promotion in November 2019 because l did not feel you had demonstrated a significant development compared to your last submission in the area of Education Leadership, this does not mean that I am against your promotion or that I will not work with you towards a successful submission - as described above, **I remain committed to doing so**.

JA-336-337 (emphasis supplied). This explanation is consistent with the Reasons for Promotion Denial.

At her deposition, Dr. Ing admitted that she had no evidence that Dr. Zandona ever met Dr. Vanaria and could articulate no evidence to support her claim that Dr. Zandona retaliated against her for her filing a sexual harassment report against Dr. Vanaria or because Dr. Ing was "opposed to sexual harassment." JA-132-134.

## I. Dr. Ing Voluntarily Leaves TUSDM and Does Not Return

In December 2019, Dr. Ing went on voluntary leave and never returned to teach at TUSDM. JA-136. She never re-submitted her application for promotion. Dr. Ing filed the instant lawsuit in January 2021. JA-11.

## STANDARD OF REVIEW

A grant of summary judgment is reviewed de novo. *Theidon v. Harvard Univ.*, 948 F.3d 477, 494 (1st Cir. 2020). A movant is entitled to summary judgment if the record, when construed in the light most favorable to the non-movant, shows

"no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law." *Id.* (quoting *Johnson v. Univ. of P.R.*, 714 F.3d 48, 52 (1st Cir. 2013)). "When a plaintiff opposes summary judgment, she bears 'the burden of producing specific facts sufficient to deflect the swing of the summary judgment scythe.'" *Theidon*, 948 F.3d at 494 (quoting *Mulvihill v. Top-Flite Golf Co.*, 335 F.3d 15, 19 (1st Cir. 2003)). Accordingly, a plaintiff may not rely on "conclusory allegations, improbable inferences, acrimonious invective, or rank speculation." *Theidon*, 948 F.3d at 494 (quoting *Ahern v. Shinseki*, 629 F.3d 49, 54 (1st Cir. 2010)).

Motions to alter a judgment under Rule 59(e), however, are reviewed for abuse of discretion. *Franchina v. City of Providence*, 881 F.3d 32, 56 (1st Cir. 2018). "In doing so, we keep in mind that '[s]uch a motion must either establish a clear error of law or point to newly discovered evidence of sufficient consequence to make a difference.' " *Id.* (quoting *Guadalupe-Báez v. Pesquera*, 819 F.3d 509, 518 (1st Cir. 2016) (alteration in original)).

When passing on personnel decisions of universities regarding their faculty, "[c]ourts have wisely recognized the importance of allowing universities to run their own affairs (and to make their own mistakes). To do otherwise threatens the diversity of thought, speech, teaching and research both within and among universities upon which free academic life depends." *Vargas–Figueroa v. Saldaña*, 826 F.2d 160,

162–63 (1st Cir. 1987).  Indeed, universities are owed a "high degree of deference" regarding their faculty promotion decisions.  *See Fields v. Clark Univ.*, 966 F.2d 49, 54 (1st Cir. 1992).

## SUMMARY OF THE ARGUMENT

The District Court granted Tufts summary judgment on all six counts of Dr. Ing's complaint:  Counts I, III, and V for gender discrimination under M.G.L. c. 151B, § 4 ("Chapter 151B"), 42 U.S.C. §2000e ("Title VII"), and 20 U.S.C. § 1681 ("Title IX"), respectively; and Counts II, IV and VI for retaliation under Chapter 151B, Title VII, and Title IX, respectively.

On appeal, Dr. Ing does not argue either that Dr. Zandona discriminated against her on the basis of gender or that the FAPTC retaliated against her. Accordingly, she has abandoned these arguments for the purposes of this appeal. *See Brown v. Tr. of Brown Univ.*, 891 F.2d 337, 352 (1st Cir. 1989) (holding issues not argued in brief are abandoned).

The District Court's decision on the discrimination claims should be affirmed because there is no genuine dispute of material fact that (1) there is no evidence of gender discrimination; (2) Dr. Ing was not qualified for promotion to full professor; and (3) Tufts' reasons for denying Dr. Ing's promotion was not pretextual.  Likewise, the District Court's decision on the retaliation claims should be affirmed because (1) there is no causal connection between Dr. Ing's sexual harassment report and any

24

adverse action attributable to Tufts; and (2) the Reasons for the Promotion Denial were not pretext for retaliation.

In addition, the District Court's order denying Dr. Ing's motion to alter the judgment should be affirmed as Dr. Ing has failed to identify an error of law or any newly discovered evidence at all, let alone such an error or piece of evidence that meets the "extraordinary" standard required for alteration of a judgment.

## ARGUMENT

### I.     The Grant of Summary Judgment Should be Affirmed

#### A.     Dr. Ing's Claims for Discrimination Fail Because She has Shown No Connection Between Her Gender and Her Promotion Denial; She was Not Qualified for the Promotion She Sought; and She Cannot Show Pretext

When there is no direct evidence of discrimination, claims under Chapter 151B, Title VII and Title IX are analyzed using the *McDonnell-Douglas* burden-shifting framework.  *See Theidon*, 948 F.3d at 495 (applying the *McDonnell-Douglas* framework to gender discrimination claims under Chapter 151B, Title VII and Title IX).  Under the *McDonnell-Douglas* framework, a plaintiff must first establish a *prima facie* case of discrimination.  Dr. Ing can make a *prima facie* case only by "showing: (1) she is a member of a protected class; (2) she was a candidate for [promotion to full professor] and was qualified under [TUSDM's] standards, practices or customs; (3) despite her qualifications she was rejected; and (4) [full professor] positions [TUSDM] were open at the time [she] was denied [promotion],"

which were filled by others possessing similar qualifications.  *Theidon*, 948 F.3d at 495 (quoting *Fields*, 966 F.2d at 53) (internal quotation marks omitted); *see Gu v. Bos. Police Dep't*, 312 F.3d 6, 11 (1st Cir. 2002).

If Dr. Ing is able to make out a *prima facie* case, "the burden of production -- but not the burden of persuasion -- shifts to [Tufts, which] must articulate a legitimate, non-discriminatory reason" for denying Dr. Ing's promotion.  *Theidon*, 948 F.3d at 495 (quoting *Johnson*, 714 F.3d at 53-54).  Next, once the employer articulates this reason, the burden moves back to the plaintiff to prove that "the employer's articulated reason for the job action is pretextual and . . . the true reason is unlawful discrimination."  *Id*. (emphasis added and citation omitted).  Lastly, "to avoid summary judgment, [Dr. Ing] must "show by a preponderance of the evidence that [Tufts'] proffered reason is pretextual *and* that the actual reason for the adverse employment action is discriminatory."[9]  *Theidon*, 948 F.3d at 496 (emphasis added).  At every step of this analysis, Dr. Ing "bears the ultimate burden of persuading the trier of fact that [Tufts] intentionally discriminated against [her]."  *See Gu*, 312 F.3d at 11 (citation omitted).

---

[9] Under Chapter 151B, Dr. Ing only needs to show pretext; she does not also need to show discriminatory animus.  *See Bulwer v. Mount Auburn Hosp*., 46 N.E.3d 24, 33 (Mass. 2016).  As discussed *infra*, Dr. Ing cannot make either showing.

     *1.    Dr. Ing's Gender Discrimination Claims Fail Because There is No Evidence Connecting Her Gender to Any Adverse Action*

As an initial matter, Dr. Ing, as the plaintiff, needs to do more than allege she is a member of a protected class and was the subject of an adverse action in order to state a claim for discrimination. *See Smith v. F.W. Morse & Co.*, 76 F.3d 413, 422 (1st Cir. 1996). Indeed, "absent a causal nexus between the employer's action and the protected trait, there is no discrimination claim." *Carroll v. Joint Apprentice & Training Tr. Fund*, No. CIV.A. 07-CV-10416-R, 2009 WL 57541, at *4 (D. Mass. Jan. 8, 2009). Here, Dr. Ing offers absolutely no nexus or connection between the FAPTC's denial of her promotion and her gender. At no point has any evidence (direct or circumstantial) been presented that there was a connection between any adverse action affecting Dr. Ing and her gender, and Dr. Ing points to none in her brief. For this simple reason alone, the District Court's grant of summary judgment should be affirmed.

     *2.    Dr. Ing Cannot Establish a* Prima Facie *Case Because She Cannot Not Show that She Attained "Superior Accomplishment" in the "Educational Leadership" Area of Excellence*

In order to make a *prima facie* showing that she was qualified for promotion to full professor, Dr. Ing must show that she was so qualified by a preponderance of the evidence. *See Fields*, 966 F.2d at 53-54. Dr. Ing cannot make this showing.

27

In arguing that she was qualified for promotion, Dr. Ing points to *Ray v. Ropes & Gray LLP*, 961 F. Supp. 2d 344, 354 (D. Mass. 2013) (Stearns, J.), aff'd, 799 F.3d 99 (1st Cir. 2015). In that case, the District Court, relying on this Court's decision in *Fields*, 966 F.2d at 53, found that the plaintiff, an associate at a law firm, had made a *prima facie* showing that he was qualified for promotion to partner because he "was sufficiently qualified to be among those persons for whom a selection, to some extent discretionary, would be made." *Ray*, 961 F. Supp 2d at 354. Where, however, there is clear evidence that a plaintiff has not met the clearly defined criteria for promotion, *see Theidon v. Harvard Univ.*, No. 15-CV-10809-LTS, 2018 WL 11026340, at *17 (D. Mass. Feb. 28, 2018), aff'd, 948 F.3d 477 (1st Cir. 2020) (plaintiff did not make *prima facie* showing that she was qualified for promotion where she failed to meet criteria for academic publications), or where there is consensus regarding a plaintiff's lack of qualification, *Fields*, 966, F.2d at 53-54 (affirming finding that professor was not qualified in part because there was clear consensus against her receiving tenure), a court may find that a plaintiff has not made a *prima facie* showing of qualification. Further, higher education promotion decisions are due a "high degree of deference." *Id*. at 54.

Here, Dr. Ing cannot make a *prima facie* showing that she was qualified for promotion to full professor because she failed to meet the criteria for her self-

selected "Educational Leadership" Area of Excellence as determined by the FAPTC's resounding vote to disapprove her promotion.

There is no genuine dispute that Dr. Ing failed to meet the criteria for the "Educational Leadership" Area of Excellence. Dr. Ing's deficiencies in this area were documented contemporaneously in both Dr. Amato's and Dr. Galburt's notes regarding their respective evaluations of her dossier (and in Dr. Steffensen's notes of the FAPTC's discussions regarding Dr. Ing). Specifically, Dr. Amato and Dr. Galburt variously noted that Dr. Ing was not a "course director," she was not active in any local, state-wide or national organizations related to education, and she held no leadership positions at TUSDM, among other deficiencies. In addition, no member of the FAPTC voted to approve her application for promotion, with five of the seven members voting to "disapprove" (with one abstaining and one voting to table Dr. Ing's application). Further, several people (including a professor of dentistry at another acclaimed school) told Dr. Ing that her dossier did not warrant promotion when she sought their opinions of her prospects. Specifically, Dr. Wolff and Dr. Blanco, neither of whom were part of TUSDM nor had any reasons to be anything but candid with Dr. Ing about her dossier, said that her candidacy was lacking. Dr. Wolff told Dr. Ing that she would not be promoted at NYU's dental school. Accordingly, Dr. Ing was simply not "among those persons" who was sufficiently qualified for promotion. The generalized opinions of Dr. Rankin,

29

provided earlier on in 2018, and Dr. Ing's division head that Dr. Ing should be promoted do not amount to a genuine dispute of fact where the evidence shows that Dr. Ing had failed to meet the published criteria for promotion and there was a clear consensus among the promotion decision makers that Dr. Ing was not qualified. When Dr. Rankin and Dr. Ing's division head provided their opinions, they (unlike Dr. Zandona) did not have before them for their review or consideration the deficiencies with Dr. Ing's dossier that had been identified by the FAPTC (*i.e.*, the Reasons for Promotion Denial) or Dr. Zandona's personal knowledge of Dr. Ing's continued failure to address those deficiencies during the course of 2019. *See Fields*, 966, F.2d at 53-54.[10]

In sum, Dr. Ing cannot establish a *prima facie* case of discrimination because, as the District Court cogently explained, "[n]o reasonable factfinder could, on the evidence produced, conclude that Dr. Ing was qualified for promotion." JA-496.

### 3.   *Dr. Ing Cannot Show that the Reasons for Promotion Denial were Pretextual*

---

[10] It is also important to note that there were no other persons similarly situated to Dr. Ing when she applied for promotion to full professor and thus she cannot show that she was treated differently than others. Specifically, during the 2017-2018 and 2018-2019 promotion cycles, no candidate for full professor selected the same two Areas of Excellence as Dr. Ing ("Teaching" and "Educational Leadership"). *Cf. Theidon v. Harvard Univ.*, 948 F.3d 477, 500 (1st Cir. 2020) ("Although comparison cases need not be perfect replicas, ... they must closely resemble one another in respect to relevant facts and circumstances." (alterations in original; interior quotation marks omitted)).

Assuming *arguendo* that Dr. Ing could establish a *prima facie* case of discrimination, Tufts has articulated a legitimate, non-discriminatory reason for the promotion denial. That is, Dr. Ing was not qualified for promotion. Accordingly, the burden shifts back to Dr. Ing to show that this reason is pretext for discrimination, *Theidon*, 948 F.3d at 496, which she cannot do. Importantly, the standard that Dr. Ing must meet to show that Tuft's explanation that she was not qualified for promotion is pretext, is significantly higher than what needs to be shown to make a *prima facie* showing that she was qualified for promotion. *See Ray*, 961 F. Supp 2d at 354 (finding plaintiff made *prima facie* showing of qualification for promotion but nevertheless granting defendant's motion for summary judgment where defendant claimed non-discriminatory reason for lack of promotion was that plaintiff was not qualified and plaintiff could not show this reason was pretext). Dr. Ing cannot show pretext because (1) there is no evidence that TUSDM's explanation of Dr. Ing's promotion denial was false or covering up discriminatory motivations; (2) any alleged irregularities with the TUSDM process do not amount to pretext as a matter of law; and (3) TUSDM's explanation for why Dr. Ing was denied promotion has remained consistent.

a.    There is No Evidence of Pretext

Dr. Ing "cannot meet [her] burden of proving 'pretext' simply by refuting or questioning the defendants' articulated reason." *Jackson v. Harvard Univ*., 721 F.

Supp. 1397, 1402 (D. Mass. 1989). Instead, she must "must elucidate specific facts which would enable a jury to find that the reason given is not only a sham, but a sham intended to cover up the employer's real and unlawful motive of discrimination." *See Ray v. Ropes & Gray LLP*, 799 F.3d 99, 113 (1st Cir. 2015); *see also Verdrager v. Mintz, Levin, Cohn, Ferris, Glovsky & Popeo, P.C.*, 50 N.E.3d 778, 794 (Mass. 2016) (holding at summary judgment stage that plaintiff needs to produce evidence that defendant-employer's "facially proper reasons given for its action against him [or her] were not the real reasons for that action"). "[M]ere questions regarding the employer's business judgment are insufficient to raise a triable issue as to pretext." *Pearson v. Massachusetts Bay Transp. Auth.*, 723 F.3d 36, 41 (1st Cir. 2013) (alteration in original).

Dr. Ing has failed to produce any evidence of pretext. Rather, the evidence shows that the FAPTC's decision to not promote Dr. Ing in 2018 and Dr. Zandona's decision not to endorse Dr. Ing for promotion in 2019 were the direct result of legitimate academic concerns that Dr. Ing was not yet qualified to be a full professor. These legitimate, non-discriminatory reasons (*i.e.*, the Reasons for Promotion Denial) were consistently communicated to Dr. Ing and were contemporaneously documented by multiple individuals. Indeed, the notes of three FAPTC members that are part of the record in this action (Dr. Amato, Dr. Galburt and Dr. Steffensen) all show that there were serious concerns that Dr. Ing did not meet the criteria for

promotion because she did not display "superior accomplishment" in the "Educational Leadership" Area of Excellence.  Further, Dr. Zandona's numerous emails to Dr. Ing throughout 2019 show that Dr. Zandona had concerns regarding Dr. Ing's qualifications for promotion and that Dr. Zandona tried to help her address those concerns.

There is no evidence that the FAPTC took Dr. Ing's gender into account when it made its decision.  Indeed, Dr. Amato, Dr. Galburt, Dr. Trotman and Ms. Bankowski all testified that the FAPTC's meetings regarding Dr. Ing all focused solely on the merits of her qualifications (Dr. Palmer attested to the same).[11]  When asked what evidence she had that the FAPTC discriminated or retaliated against her, Dr. Ing could articulate nothing but speculation and generalities about gender discrimination in the field of education, all clearly insufficient to meet her burden.

> b.    Any Alleged Irregularities with the FAPTC's Process Do Not Amount to Pretext

Dr. Ing attempts to point to several alleged irregularities with the FAPTC's process as a way to contrive pretext.  Her efforts are futile.  Specifically, Dr. Ing offers the following as alleged procedural improprieties: (1) minutes were not taken

---

[11] Although as explained *supra*, Dr. Ing has abandoned her argument that Dr. Zandona discriminated against her, it should be noted that Dr. Ing can point to no evidence that Dr. Zandona, a woman, considered Dr. Ing's gender when deciding not to endorse her.  Instead, the evidence shows that Dr. Zandona repeatedly tried to help Dr. Ing fortify her promotion candidacy and offered support and guidance on how to do so.

of the FAPTC meeting during which Dr. Ing's promotion was discussed; (2) Dr. Amato allegedly performed a second review of Dr. Ing's dossier after the FAPTC had already voted to deny Dr. Ing's promotion; (3) there were several drafts of the letter informing Dr. Ing of her promotion denial; and (4) there was a delay between the FAPTC's vote denying Dr. Ing's promotion and Dr. Ing being informed of the decision. These are insignificant administrative or clerical aspects of the FAPTC's process, none of which go the substance of the FAPTC's decision to deny Dr. Ing's promotion.  As set forth below, and as the District Court found, these four assertions do not constitute pretext on a factual basis and as a matter of law.

1.  The evidence shows that minutes for FAPTC meetings were not kept or maintained while Dr. Palmer was chair of that committee (*i.e.*, from at least January 2018 through July 2018) as to Dr. Ing <u>or any other promotion candidate</u> during that period.  This was informed both by searches and reviews of Tufts' records and discussion with relevant record-keepers. Dr. Ing has made no showing regarding how the presence or absence of minutes affected the FAPTC's evaluation of her candidacy, and she repeatedly ignores that records of the consideration of her candidacy exists in the form of notes from Dr. Amato, Dr. Galburt and Dr. Steffensen, which uniformly show that the discussion focused solely on her merits (or lack thereof) and not on her gender or

34

sexual harassment report.[12]  Dr. Ing also ignores the fact that she deposed four of the eight people present during the FAPTC's discussion of her candidacy, and all four of them testified clearly that the discussion focused solely on Dr. Ing's academic credentials and not on any impermissible factors.

2.  Dr. Ing's assertion that "[t]here has been no explanation of why Dr. Trotman required Dr. Amato to review Dr. Ing's dossier a third time (his second time) even after a vote on her application had already been taken" is of no significance.  Dr. Ing admits that this alleged additional evaluation occurred *after* the FAPTC's vote to deny her promotion.  Dr. Ing offers no evidence as to how an additional review of her dossier that occurred after the FAPTC already had voted to deny her promotion somehow could be an irregularity that would constitute pretext.

3.  The fact that there were several drafts of the letter informing Dr. Ing that her promotion was denied and that Dean Thomas was involved in the drafting of the final letter is not sufficient to show pretext.  Dr. Ing does not dispute that that outcome expressed in each draft of the letters

---

[12] As the District Court made clear when granting Tufts' motion for summary judgment, there is not a sufficient basis to find that Tufts spoiled the alleged FAPTC meeting minutes because even if they did exist Dr. Ing "has failed to show that Tufts destroyed or failed to preserve them with knowledge of their relevance to her prospective claims." JA-498.

was the same: her promotion was denied.  In addition, these letters were drafted (and Dean Thomas became involved in the drafting) several months after the FAPTC had decided to deny Dr. Ing's promotion, and thus had no impact on the ultimate decision on her promotion.

4. The few months period between when the FAPTC voted against Dr. Ing's promotion and when she was informed of the denial is also of no significance. The fact remains that notification of denial occurred *after* the FAPTC's decision denying her promotion was finalized.

Dr. Ing's alleged four irregularities do not constitute pretext as a matter of law.  This Court's recent decision in *Theidon v. Harvard University* is instructive on the standard that needs to be met for alleged irregularities to constitute pretext and illustrates how Dr. Ing has failed to meet that burden.  In *Theidon*, an anthropology professor was denied tenure and argued that procedural irregularities in the university's review process showed pretext.  *Theidon*, 948 F.35 at 497-504.  There, the plaintiff pointed to the following supposed irregularities in the review of her tenure application: the university sent out an incomplete sample of her publications to external reviewers; a draft (as opposed to a final) statement of her application was sent to a committee reviewing the case; the university "improperly inserted her complaints about sex discrimination into the tenure review process;" and the university held her to a different, and higher, publication standard than other

36

candidates. *Id.* On appeal, the First Circuit dismissed the argument that these irregularities amounted to pretext and affirmed the district court's grant of summary judgment. *See id*. at 498 (holding in regard to the alleged publication sample irregularity that "there is no indication that this perceived procedural irregularity was relevant to or had any bearing on [the university's] evaluation of [the plaintiff's] tenure prospects.").

Here, the alleged irregularities that Dr. Ing offers are far less potentially significant than those identified by the plaintiff in *Theidon*. Whereas some of the irregularities alleged in *Theidon* went to the substantive evaluation of the plaintiff's application (*e.g.*, the incomplete publication sample and the alleged higher standard), here the supposed irregularities merely go to the administrative/clerical processes of the FAPTC and are completely removed from the FAPTC's substantive evaluation of Dr. Ing's dossier. Indeed, here the undisputed facts show that none of these supposed irregularities *were or could* be relevant or have a bearing on the FAPTC's denial of Dr. Ing's promotion.

c.    The Stated Reasons for the Denial of Dr. Ing's Promotion have Remained Consistent

The Reasons for Promotion Denial remained consistent at all times: Dr. Ing was not qualified for the promotion she sought. This consistency further undercuts any argument that the basis for Tufts' decision not to promote Dr. Ing was pretextual. *See Velez v. Thermo King de Puerto Rico, Inc*., 585 F.3d 441, 449 (1st Cir. 2009

("[t]he fact that the employer gave different reasons at different times for its action surely supports a finding that the reason it ultimately settled on was fabricated.").

Each time Dr. Ing was told why she was not promoted, the reason remained the same: She failed to meet the criteria for the "Educational Leadership" Area of Excellence.  This was consistently communicated to Dr. Ing multiple times: by Dr. Palmer in her August 8, 2018 letter to Dr. Rankin; by Dr. Trotman in her September 19, 2018 meeting with Dr. Ing; by Dean Thomas in his September 20, 2018 letter to Dr. Ing; by Dean Thomas in his January 15, 2019 letter to Dr. Ing; by Dr. Zandona in her meetings with Dr. Ing in the fall of 2019; and by Dr. Zandona in her December 9, 2019 letter to Dr. Ing.  This consistency demonstrates that the decision not to promote Dr. Ing was not pretextual

This Court should affirm the grant of summary judgment in Tufts' favor on Dr. Ing's discrimination claims.  For, "unless the evidence is sufficient to support a finding that a decisionmaker's doubts about the 'scholarly merits of [a] [tenure] candidate's academic work ... are influenced by forbidden considerations such as sex or race, universities are free to establish departmental priorities, to set their own required levels of academic potential and achievements and to act upon the good faith judgments of their departmental faculties or reviewing authorities.'" *Theidon*, 948 F.3d at 503 (*quoting Villanueva*, 930 F.2d at 131 (alterations in original)); *see Jackson*, 721 F. Supp. at 1404 ("[T]he elasticity of promotion standards for teachers

in an academic setting does not constitute, in and of itself, evidence of discrimination.").

Dr. Ing cannot show that she was qualified for promotion to full professor or that the reasons for the denial of her promotion were pretextual. Accordingly, the grant of summary judgment on Counts I, III and V should be affirmed.[13]

### B.    Dr. Ing's Retaliation Claims Fail Because There is No Causal Connection Between her Sexual Harassment Report and the Decisions to Deny her Promotion

When there is no direct evidence of retaliation, a plaintiff's claim is analyzed under the *McDonnell-Douglas* framework. *See Ray*, 799 F.3d at 107; *Frazier v. Fairhaven Sch. Comm.*, 276 F.3d 52, 67 (1st Cir. 2002) ("[T]he jurisprudence of Title VII supplies an applicable legal framework [for Title IX claims]."). To make her *prima facie* case of retaliation "a plaintiff must show that (i) she undertook protected conduct, (ii) she suffered an adverse employment action, and (iii) the two were causally linked." *Pearson v. Mass. Bay Transp. Auth.*, 723 F.3d 36, 42 (1st Cir. 2013) (analyzing retaliation claims under Title VII and Chapter 151B together); *see Theidon*, 948 F.3d at 505 (using the same standard for Title IX retaliation claims);

---

[13] Dr. Ing also has not shown any evidence of discriminatory animus, which is required for her claims under Title VII and Title IX claims. *See Ray v. Ropes & Gray LLP*, 799 F.3d 99, 113 n.8 (1st Cir. 2015). There is no evidence whatsoever that any member of the FAPTC or Dr. Zandona (or anyone at Tufts) had a discriminatory animus toward Dr. Ing, and for this additional reason, the decision below should be affirmed.

*see also Mole v. Univ. of Mass.*, 814 N.E.2d 329, 339 (Mass. 2004).  Here, Dr. Ing's

*prima facie* case fails on the third element: there is no causal connection between

her reports of sexual harassment and the refusal to endorse her for promotion.[14]   In

addition, Dr. Ing cannot show that the reasons why she was not promoted were

pretextual.

In her appellate brief, Dr. Ing does not claim error with the District Court's

finding that there was "unrefuted evidence that no member of the FAPTC knew of

Dr. Ing's 2017 sexual harassment complaint" and thus the denial of her promotion

was not retaliatory.  JA-500.  Accordingly, Dr. Ing has abandoned this argument.[15]

*See Brown*, 891 F.2d at 352.

---

[14] For Chapter 151B and Title VII retaliation claims, plaintiffs must show a "'but for' causal connection between the protected activity and the tenure [promotion] denial." *See Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 133 S. Ct. 2517, 2533 (2013); (holding "but-for" causation required for Title VII retaliation claims); *Miceli v. JetBlue Airways Corp.*, 914 F.3d 73, 85 (1st Cir. 2019) (applying "but for" standard to Chapter 151B retaliation claim). The causation standard for retaliation claims under Title IX is unsettled but the First Circuit has applied a "substantial or motivating" factor standard previously. *See Theidon*, 948 F.3d at 506; *see also Frazier v. Fairhaven Sch. Comm.*, 276 F.3d 52, 67 (1st Cir. 2002).  Regardless of the standard, Dr. Ing's retaliation claims fail.

[15] Even if Dr. Ing had not abandoned this argument, the evidence in the record shows that no FAPTC member knew of the Dr. Ing's sexual harassment report at the time the FAPTC voted to deny her promotion.  To show causation, "the employee must show that the retaliator knew about her protected activity—after all, one cannot have been motivated to retaliate by something he was unaware of." *Medina-Rivera v. MVM, Inc.*, 713 F.3d 132, 139 (1st Cir. 2013)

Dr. Ing thus stakes her appeal on the retaliation claims solely on her assertion that Dr. Zandona declined to endorse her for promotion because Dr. Ing made a report of sexual harassment nearly two years prior against a man Dr. Zandona had never met and/or because Dr. Ing indicated to Dr. Zandona that she was "opposed to sexual harassment." This argument has no basis in fact or law and Dr. Ing's belated attempt to manufacture a dispute of fact is not credible and should be rejected here, as it was by the District Court.

1. *There is No Connection Between Dr. Ing's Sexual Harassment Report and Dr. Zandona's Decision to Not Endorse her for Promotion*

   a. <u>Dr. Ing's Contemporaneous Email Contradicts the Allegation Upon Which her Retaliation Claims Are Based</u>

The entirety of Dr. Ing's unabandoned retaliation claim hinges on the allegation (made for the first time in her January 7, 2021 complaint) that Dr. Zandona told her at the January 9, 2019 meeting that "I am most likely not going to promote you." This allegation is completely undercut by Dr. Ing's contemporaneous email sent a few hours after the January 9, 2019 meeting, which states: "I was quite shocked today at the meeting where I was told to meet with a new chairperson and was told that she **may not** write a positive letter of support like Dr. Rankin did." JA-392. (emphasis supplied). Such a statement is reasonable and logical in that Dr. Zandona knew nothing regarding Dr. Ing's credentials at the time of the January 9, 2019 meeting and would want an opportunity to evaluate Dr. Ing's application for

41

promotion independently, particularly in light of the fact that the FAPTC had just rejected Dr. Ing's promotion for specific reasons.   Further, Dr. Ing's MCAD charge, which was signed in May 2020, does not assert that Dr. Zandona told her "I am most likely not going to promote you" (or anything similar). *See* Tufts Add. A-016-021 As the District Court carefully found (twice in fact, once in its summary judgment opinion and again in its order denying Dr. Ing's motion to amend or alter the judgment), there is no genuine dispute of fact regarding this recent, illogical, and contemporaneously contradicted allegation.   Dr. Ing should not be permitted to manufacture a genuine dispute of fact by contradicting her own previous statement. *Cf. Morales v. A.C. Orssleff's EFTF*, 246 F.3d 32, 35 (1st Cir. 2001) ("We have refused to allow issues of fact to be created simply by submitting a subsequent contradictory affidavit.").

Accordingly, the District Court's finding that Tufts did not retaliate against Dr. Ing should be affirmed.

> b.   <u>The Undisputed Facts Show that Dr. Zandona Worked Diligently with Dr. Ing to Help her Improve her Promotion Prospects</u>

The undisputed facts regarding the entirety of Dr. Zandona's relevant interactions with Dr. Ing at TUSDM are as follows:

- **December 13, 2018**: Dr. Zandona, who joined TUSDM on November 1, 2018, meets with Dr. Ing as part of her effort to meet all of the faculty

42

in her department.  At this meeting, Dr. Ing—unprompted—told Dr. Zandona about her sexual harassment report regarding a former faculty member who Dr. Zandona did not know and never met.

- **January 9, 2019**:  Dr. Zandona is present at the meeting between Dr. Ing, Dean Thomas, Dr. Trotman and Ms. Bankowski regarding the FAPTC's denial of Dr. Ing's promotion in the spring of 2018.  At this time, Dr. Zandona had not reviewed Dr. Ing's dossier, CV or credentials.

- **January 9, 2019**:  Following the meeting, Dr. Ing emails Ms. Bankowski: "I was quite shocked today at the meeting where I was told to meet with a new chairperson and was told that she may not write a positive letter of support like Dr. Rankin did."

- **March 21, 2019**: Dr. Zandona and Dr. Ing meet to discuss Dr. Ing's dossier in order to identify areas for Dr. Ing to improve upon.

- **April 2019**: Dr. Zandona and Dr. Ing meet and Dr. Zandona again offers feedback regarding how Dr. Ing can improve her dossier.

- **May 21, 2019**:  Dr. Zandona and Dr. Ing meet to again work on Dr. Ing's dossier.

- **May 22, 2019**:  Dr. Zandona and Dr. Ing exchange lengthy emails wherein Dr. Zandona offers Dr. Ing specific ways that Dr. Ing can

43

improve her promotion prospects and offers her numerous statements of support.

- **July 2019**: Dr. Zandona and Dr. Ing meet to discuss Dr. Ing's promotion candidacy and how to strengthen it.

- **August 2019**: Dr. Zandona and Dr. Ing once again meet to discuss Dr. Ing's promotion candidacy and ways to improve her chances of success.

- **October 3, 2019**: Dr. Zandona and Dr. Ing meet to discuss the progress of Dr. Ing's promotion candidacy and steps that Dr. Ing can take to bolster it.

- **October 4, 2019**: Dr. Ing and Dr. Zandona exchange lengthy emails wherein Dr. Zandona provides specific suggestions to Dr. Ing to address the deficiencies in her dossier and offers words of encouragement.

- **October 2019**: Dr. Zandona informs Dr. Ing that she will not endorse Dr. Ing for promotion during the cycle that ends in November 2019 because she felt Dr. Ing "had not completed her dossier from 2018 to 2019. It did not have enough things that I felt the FAPTC would look at and merit a promotion."

- **November 13, 2019**: Dr. Zandona and Dr. Ing meet and disagree about Dr. Ing's promotion, with Dr. Ing claiming that she merits it and Dr.

Zandona disagreeing and attempting to outline a plan with Dr. Ing so she can achieve promotion in a subsequent cycle.

- **December 9, 2019**:  Dr. Zandona sends Dr. Ing a letter in which she states: "While it is true that I was not prepared to support your submission for promotion in November 2019 because l did not feel you had demonstrated a significant development compared to your last submission in the area of Education Leadership, this does not mean that I am against your promotion or that I will not work with you towards a successful submission - as described above, **I remain committed to doing so**."  JA-336-337  (emphasis supplied).

- **January 7, 2021**: Dr. Ing files this lawsuit wherein she alleges, for the very first time, that Dr. Zandona told her during the January 9, 2019 meeting that "I am most likely not going to promote you."  Notably Dr. Ing did not make this claim in her charge to the MCAD, which she signed on May 1, 2020. Tufts Add. A-0021.

The entirety of Dr. Ing's claim that there is a causal connection between her 2017 sexual harassment report and Dr. Zandona's decision not to endorse her for promotion in 2019 rests on the recently created allegation that in a group meeting on January 9, 2019, Dr. Zandona said "I am most likely not going to promote you."

As explained *supra*, this allegation is a recently manufactured distortion that does not and cannot create a genuine issue of material fact.  In evaluating the allegation's lack of credibility, and therefore its inability to concoct a genuine dispute of fact, one must consider the following:

1. Dr. Ing's contemporaneous email stating that Dr. Zandona told her merely that she "**may not** write a positive letter of support like Dr. Rankin did."  (emphasis supplied)

2. Dr. Zandona spent months during the course of 2019 working with Dr. Ing to address the deficiencies with her dossier identified by the FAPTC and consistently offered specific advice to Dr. Ing on how to do so.  (As mentioned *supra*, Dr. Rankin was not aware of these deficiencies when he chose to endorse Dr. Ing for promotion consideration.)  It defies logic and common sense that Dr. Zandona would spend all of this time working with Dr. Ing for any reason other than a commitment to an independent evaluation and furtherance of Dr. Ing's promotion candidacy.

3. Dr. Zandona, throughout 2019, repeatedly stated to Dr. Ing that she wanted Dr. Ing to be promoted once she had addressed the inadequacies in her candidacy.  Again, common sense defies saying that, let alone putting it in writing, if Dr. Zandona did not actually want to see Dr. Ing

obtain her promotion once she had sufficiently strengthened her dossier to address the deficiencies identified by the FAPTC.

4. Dr. Zandona denies making this alleged remark and the other three attendees at the meeting where it was allegedly made do not recall it.

5. When Dr. Ing first alleged that Dr. Zandona retaliated against her in the MCAD charge, Dr. Ing did not include this statement, but rather, alleged it for the first time in her complaint in this case.

"The evidence illustrating the factual controversy cannot be conjectural or problematic; it must have substance in the sense that it limns differing versions of the truth which a factfinder must resolve." *See Mack v. Great Atl. & Pac. Tea Co*., 871 F.2d 179, 181 (1st Cir. 1989). Here, there is no substance to Dr. Ing's allegation that would "limn[] differing versions of the truth." Rather, common sense and the overwhelming weight of the evidence show that Dr. Zandona did not make the alleged remark, spent the better part of 2019 working with Dr. Ing to help improve her candidacy, and, when in October 2019 it became apparent that Dr. Ing failed and/or refused to make sufficient improvement by the impending deadline, told Dr. Ing that she would not endorse her at that time for that promotion cycle.

Simply put, there is no causal connection between Dr. Ing's 2017 report of sexual harassment and Dr. Zandona's decision not to endorse her for promotion in 2019. Accordingly, Dr. Ing cannot make a *prima facie* case of retaliation.

      2.    *Dr. Ing Cannot Show that Dr. Zandona's Stated Reasons for her Actions were Pretextual.*

There is no evidence supporting the contention that Dr. Zandona's stated reasons for her actions were pretext for retaliation. As explained *supra*, Dr. Zandona determined that Dr. Ing was not ready for promotion based solely on the merits of her dossier.

## II.    <u>The Denial of the Motion to Alter Should be Affirmed</u>

After the District Court granted Tufts summary judgment, Dr. Ing filed a motion to alter that judgment on the spurious grounds that the District Court allegedly ignored the fact that Dr. Zandona had not reviewed Dr. Ing's qualifications at the time of the January 9, 2019 meeting.[16] According to Dr. Ing, this fact proved that Dr. Zandona's alleged remark of "I am most likely not going to promote you" to Dr. Ing was retaliatory because Dr. Ing had told Dr. Zandona that she (Dr. Ing) was opposed to sexual harassment. As set forth *supra* and as the District Court reasoned, Dr. Ing's efforts to manufacture a disputed fact out of a belated, illogical and contemporaneously contradicted allegation cannot succeed. In the words of the District Court, "Dr. Ing's contention that the court should have placed greater weight on one fact relevant to the [alleged] statement's import does not meet the standard

---

[16] As the District Court pointed out in its Summary Judgment opinion, and its order denying the motion to alter the judgment, it did not "ignore" this "fact." JA-500-502.

for alteration of judgment." JA-502. Accordingly, Dr. Ing's motion to alter the judgment not only falls well short of meeting the "extraordinary" standard needed to alter a final judgment, it fails to follow any standard of logic or reason. *See Palmer v. Champion Mortg.*, 465 F.3d 24, 30 (1st Cir. 2006). The District Court's denial of the motion to alter should be affirmed.

## CONCLUSION

The District Court's grant of summary judgment and denial of the motion to alter that judgment should be affirmed in their entireties.

TUFTS UNIVERSITY

By its attorneys,

/s/ *Jeremy M. Sternberg*
Jeremy M. Sternberg (No. 14507)
*jeremy.sternberg@hklaw.com*
Miriam J. McKendall (No. 17793)
*miriam.mckendall@hklaw.com*
Douglas R. Sweeney (No. 1206274)
*douglas.sweeney@hklaw.com*
HOLLAND & KNIGHT LLP
10 St. James Avenue
Boston, MA 02116
(617) 523-2700

Dated: May 3, 2023

## <u>CERTIFICATE OF COMPLIANCE</u>

In accordance with Fed. R. App. P.. 32(g), I hereby certify:

1. This document complies with the word limit of Fed. R. App. P. 32(7)(B)(i) because, excluding the parts of the document exempted by Fed. R. App. P. 32(f), it contains 12,015 words, according to the word count feature on Microsoft Word for Microsoft 365.

2. This document complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this documents has been prepared in a proportionally spaced typeface using Microsoft Word's Times New Roman font in size 14.

s/ *Douglas R. Sweeney*
Douglas R. Sweeney
Attorney for Tufts University

## <u>CERTIFICATE OF SERVICE</u>

I, Douglas R. Sweeney, hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on this 3rd day of May, 2023.

/s/ *Douglas R. Sweeney*
Douglas R. Sweeney
Attorney for Tufts University

**No. 23-1030**

---

## United States Court of Appeals For the First Circuit

---

MELISSA ING,

*Plaintiff – Appellant,*

v.

TUFTS UNIVERSITY,

*Defendant – Appellee.*

---

On Appeal from a Judgment of the
United States District Court for the District of Massachusetts

---

## ADDENDUM OF DEFENDANT-APPELLEE TUFTS UNIVERSITY

---

Jeremy M. Sternberg (No. 14507)
*jeremy.sternberg@hklaw.com*
Miriam J. McKendall (No. 17793)
*miriam.mckendall@hklaw.com*
Douglas R. Sweeney (No. 1206274)
*douglas.sweeney@hklaw.com*
HOLLAND & KNIGHT LLP
10 St. James Avenue
Boston, MA 02116
(617) 523-2700

ADDENDUM TABLE OF CONTENTS

Declaration of Douglas R. Sweeney in Support of Tufts University's Reply in Support of its Motion for Summary Judgment……………………………….A-003

Charge of Discrimination Filed by Melissa Ing with the Massachusetts Commission Against Discrimination, dated May 1, 2020……………………A-015

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

MELISSA ING,

       Plaintiff,

                                            CIVIL ACTION NO:  1:21-CV-10032-RGS

v.

TUFTS UNIVERSITY,

       Defendant.

## DECLARATION OF DOUGLAS R. SWEENEY

I, Douglas R. Sweeney, declare as follows:

1.     I am a member of the bar of the Commonwealth of Massachusetts and an associate with Holland & Knight LLP, 10 St. James Avenue, Boston, MA, 02116, attorneys for defendant Tufts University[1] ("Tufts" or the "University").

2.     I make this declaration in support of Tufts' Reply in Support of its Motion for Summary Judgment.  The below factual statements are true and accurate to the best of my knowledge, information and belief, and the attachments hereto are true and correct copies of the following documents (after redacting sensitive and personal information about third-parties not relevant to this lawsuit):

3.     On multiple occasions, including April 6, 2022, and August 11, 2022, I had telephone conversations with Mitchell J. Notis, the counsel for Plaintiff, wherein I explained to him that minutes for the FAPTC did not exist for the time that Dr. Carole Ann Palmer was the chair of the Tufts University School of Dental Medicine ("TUSDM") Faculty Appointment

---

[1] The correct legal name for Tufts University is the Trustees of Tufts College.

Promotion and Tenure Committee ("FAPTC") (*i.e.*, from at least January 2018 through July 2018).  This explanation was based on my own personal review of TUSDM records and discussions with relevant record-keepers.

4.      Tab 1 contains excerpts of the deposition transcript of Dr. Carroll Ann Trotman, wherein counsel for Plaintiff asked Dr. Trotman, "Do you know for a fact that minutes were kept at the [FAPTC] meetings in 2018," and  Dr. Trotman responded, "I don't know for a fact."

5.      Tab 2 contains minutes from TUSDM FAPTC meetings of October 23, 2018 and October 30, 2018 (*i.e.*, when Dr. Maria Papageorge was the chair of the FAPTC); these minutes do not contain detailed reconstructions of the FAPTC's discussion of a promotion applicant's candidacy.  (TUFTS_0002997-2998)

6.      Tab 3 contains the handwritten notes of FAPTC member Dr. Bjorn Steffensen concerning the FAPTC's discussion of Plaintiff's promotion candidacy and dated March 27, 2018; these notes do not mention Plaintiff's gender or sexual harassment complaint, but do contain the word "unqualified."  (TUFTS_0003997-3998)

I declare under the penalty of perjury that the foregoing is true and correct

Executed on August 26, 2022.

> /s/ *Douglas R. Sweeney*
> Douglas R. Sweeney (BBO No. 694319)
> *douglas.sweeney@hklaw.com*
> HOLLAND & KNIGHT LLP
> 10 St. James Avenue
> Boston, MA 02116
> (617) 523-2700

<u>CERTIFICATE OF SERVICE</u>

     I, Douglas R. Sweeney, hereby certify that on August 26, 2022, a true and correct copy of this document was served on Plaintiff's counsel of record by e-mail and through the ECF filing system.


                                          /s/ *Douglas R. Sweeney*
                                        Douglas R. Sweeney

Tab 1

Page 1

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO: 1:21-CV-10032-RGS


------------------------------
                             )
MELISSA ING,                 )
          Plaintiff,         )
                             )
          vs.                )
                             )
TUFTS UNIVERSITY,            )
          Defendant.         )
                             )
------------------------------


   ZOOM DEPOSITION OF CARROLL A. TROTMAN, taken

before June Poirier, Shorthand Reporter and Notary

Public, on Monday, April 11, 2022,

commencing at 10:05 a.m.

Page 22

1   process. And it was the chair and the
2   candidate who compiled the portfolio and the
3   submission was made by the candidate.
4   Q. Dr. Trotman, if they have the presentation
5   and preparation is done and they look to you
6   and say gee, Dr. Trotman, who do we do now, are
7   you going to tell them they have to vote or are
8   you going to tell them something else?
9   A. I wasn't required to tell them anything.
10  Q. What did you do?
11  A. I was there to clarify any questions they
12  had about the candidate if I happened to meet
13  with the candidate and the chair of the
14  department. The questions that I -- basically
15  that's why I was there. I am not the chair of
16  the promotion and tenure committee.
17  Q. I know that, you said had that a few
18  times, I understand. You said minutes were
19  kept; is that correct?
20  A. That's my understanding, yes.
21  Q. Do you know for a fact that minutes were
22  kept at the meetings in 2018?
23  A. I don't know for a fact. I would presume
24  that they were kept.

Page 23

1   Q. Why you would you presume that?
2   A. It is my understanding that Monika
3   Bankowski kept minutes of the meetings.
4   Q. Do you recall ever seeing minutes of the
5   2018 meetings?
6   A. I could have. I don't recall the specific
7   date.
8   Q. At some point did you learn that Dr. Ing
9   had filed claims, internally claims of sexual
10  harassment against Rolly Vanaria?
11  A. At some point I learned that, yes.
12  Q. When did you learn that, Doctor?
13  A. After -- jeez, I would say fairly
14  recently.
15  Q. What does that mean?
16  A. When this process started.
17  Q. Which process?
18  A. I guess this -- the process that leads me
19  to be sitting here.
20  Q. The lawsuit?
21  A. Yes.
22  Q. When you were sitting on the promotions
23  committee in 2018 as a nonvoting member and
24  when you were not chair of that committee did

Page 24

1   you know about the sexual harassment charges at
2   that point?
3   A. No.
4   Q. You had no knowledge of them at all?
5   A. No.
6   Q. Do you know if any of the members of the
7   committee, the voting members including the
8   chair had any knowledge of the sexual
9   harassment claims?
10  A. No idea.
11  Q. Did anyone tell you about them before the
12  meeting?
13  A. No.
14  Q. Did anyone discuss them during the
15  meeting?
16  A. No.
17  Q. So in the March 27, 2018 meeting at which
18  Dr. Ing's promotion was discussed, was there
19  any reference to Dr. Vanaria?
20  A. I have no idea. I have no idea. In other
21  words, I don't recall any reference in any
22  meeting to anybody by that name.
23  Q. Okay.
24  A. In any promotion meeting. You're asking

Page 25

1   about a specific meeting and I have no
2   information in front of me about that and I
3   can't remember, it was back. But I do not
4   recall any mention of that name in any meeting
5   that I was in.
6   Q. Do you recall any mention in the March 27,
7   2018 meeting of Dr. Ing having filed claims of
8   sexual harassment?
9   A. No.
10  Q. Do you recall any mention of that in the
11  April 3rd, 2018 meeting?
12  A. No.
13  Q. Do you recall in either of those meetings
14  any hostility toward Dr. Ing being expressed?
15  A. No.
16  Q. Do you recall anything favorable being
17  said about Dr. Ing in those two meetings?
18  A. You know, in the context of her portfolio
19  which was the discussion, the areas of
20  strengths, and I can't remember, right, but...
21  Q. Is it fair to say you don't remember a
22  whole lot about these two meetings?
23  A. I suppose.
24  Q. I'm asking you yes or no, Doctor.

Tab 2



**Tufts | School of Dental Medicine**

## Tufts University School of Dental Medicine
## Faculty Appointments Promotions and Tenure Committee
## Meeting Minutes – October 23, 2018
## 8:00am - 9:00 a.m.

**Present:**  Dr. Maria Papageorge (Chair), Dr. Robert Amato, Dr. Roger Galburt, Dr. Aruna Ramesh, Dr. Bjorn Steffensen, Dr. Carroll Ann Trotman (non-voting), Ms. Monika Bankowski (recorder)

**Excused:**  Dr. Eikaterini Antonellou, Dr. Noshir Mehta

1. Discussion of the letter received by Dr. Papageorge from Dr. ▮▮▮▮▮▮ (letter on file) and proposed changes to the FAPTC Guidelines (Chapter 3 of the Faculty Handbook).
   - Proposed changes to pg. 2 of the FATPC Guidelines: *"Any Track 2 Non-tenure/Contract Track faculty member who wishes to become tenure track must meet entry requirements and will enter Track 1 tenure track at their current academic rank. ~~Be reassigned to Assistant Professor rank in Track 1, regardless of their existing rank.~~"*
   - Committee proposed to delete "Internal Candidates Only" (in the first column, second bullet point on pg. 3 of the FAPTC Guidelines).
   - Discussion and proposed changes to pg. 5 of the FAPTC Guidelines.
   - Concerns were raised with meeting the qualification criteria for the Associate Professor and Professor ranks under the tenure-track when switching from contract track.
   - Motion by Dr. Galburt to reach out to the Provost Office and confirm that the FAPTC Guidelines can be adjusted and to confirm that there would be no issues with changing the language.
   - Ms. Bankowski to pose the following questions to Kevin Dunn, Vice Provost:
     - *"Assuming faculty meets the qualifications for the tenure-track, can we have faculty switch from Assistant Professor to Associate Professor on tenure-track."*

   Committee tabled the discussion of Dr. ▮▮▮▮▮▮'s letter until proposed changes to the FATPC Guidelines are confirmed by the Provost Office. Committee also proposed that any further communication with Dr. ▮▮▮▮▮▮ should go through the Department Chair.

2. Discussion of Dr. ▮▮▮▮▮▮'s promotion to Associate Professor with Tenure.
   - Committee assigned Dr. Galburt and Dr. Antonellou to review the portfolio.

3. Discussion of Dr. Melissa Ing's promotion denial and appeal.
   - Committee reiterated that Dr. Ing's dossier was too weak to promote her to the Professor rank because she does not meet all the qualifications for promotion.
   - The case was referred to the Dean and both Dr. Ing and Dr. Rankin, Department Chair have been informed of the decision of FAPTC.

4. Committee members proposed that any faculty members who wish to meet with the FAPTC can request a meeting with the committee members. The Department Chairs should be the liaisons between the individual faculty and the FAPTC.

A-010



**Tufts University School of Dental Medicine**
**Faculty Appointments Promotions and Tenure Committee**
**Meeting Minutes – October 30, 2018**
**8:00am - 9:00 a.m.**

**Present:**    Dr. Maria Papageorge (Chair), Dr. Robert Amato, Dr. Eikaterini Antonellou, Dr. Roger
Galburt, Dr. Aruna Ramesh, Dr. Carroll Ann Trotman (non-voting), Ms. Monika
Bankowski (recorder)

**Excused:**    Dr. Noshir Mehta, Dr. Bjorn Steffensen

1. Dr. ████████████ s promotion to Associate Professor with tenure.
   - After reviewing Dr. ██████████ s dossier, Dr. Galburt proposed that Dr. Steffensen or
   another committee member with more experience in tenure promotions and NIH granting
   should review Dr. ██████████ s dossier.

2. Follow up on Dr. Melissa's Ing promotion.
   - Grievance process has been written up by Kevin Dunn, Vice Provost and shared with the
   FAPTC.
   - Dean Thomas may decide to form an ad hoc committee if needed.

3. Upcoming promotions.
   - Committee members have been assigned to review the following upcoming promotions:
     - Dr. Amato – to review Dr. ██████████ 's dossier
     - Dr. Antonellou – to review Dr. ██████████ 's dossier
     - Dr. Galburt – to review Dr. ██████████ ' dossier
     - Dr. Ramesh – to review Dr. ██████████ 's dossier

4. Dr. ██████████ 's – discussion of her appointment as Professor with Tenure
   - Committee tabled the discussion until all letters of recommendation have been received.
   - Motion by Dr. Galburt, 2nd by Dr. Amato to wait for letters

5. Discussion of the definition of the Course Director title as it appears on the course templates.
   - Committee proposed that course templates used by Academic Affairs need to be adjusted to
   reflect the correct titles.

6. Discussion of background checks for faculty.
   - Committee agreed that background checks should not be a part of the FAPTC process, this
   is currently done at the University/HR level. FAPTC should only focus on professional
   standards as they relate to faculty appointments.

CONFIDENTIAL                                                                                            TUFTS_0002998

Tab 3

3/27/18

Melissa Ing          Assoc prof
 ~ Teaching
 ~ Educal Leadership

 Philosophy
   ~ Evidence based
   ~ Digital based


 Tuft
         Didactic & Preclin courses      ? courses vs.
                                            workshop

         Developed I DPI + III          ? poorly defined
                                           roles

     1992-95    UCON
             Term Leader 99-2007
             Preclinical
     Dir Prelab clin Progr UCON


     2011 → Tufts
         Awards  Colgate           UCo
         Nominated Teaching/Techal
                Betts Soule
     Several not received

         No Leadership in cmtes
         SOAP → ACtion


     2015   Carrera group

CONFIDENTIAL                                    TUFTS_0003997

Eng (cont)

Volunteers homeless shelter

Unqualified

Documented leadership

Scholarship — no evidence of educational

Galgriot

CONFIDENTIAL

TUFTS_0003998

# CHARGE OF DISCRIMINATION

This form is affected by the Privacy Act of 1974; See Privacy Act Statement before completing this form.

☐ FEPA

☐ EEOC

### MASSACHUSETTS COMMISSION AGAINST DISCRIMINATION    and EEOC
*State or local Agency, if any*

| NAME *(Indicate Mr., Ms., Mrs.)* | HOME TELEPHONE *(Include Area Code)* |
|---|---|
| Ms. Melissa Ing | 860-214-0858 |

| STREET ADDRESS | CITY, STATE AND ZIP CODE | DATE OF BIRTH |
|---|---|---|
| 11 Berkeley Court | Brookline, MA 02445 | 4.22.63 |

NAMED IS THE EMPLOYER, LABOR ORGANIZATION, EMPLOYMENT AGENCY, APPRENTICESHIP COMMITTEE, STATE OR LOCAL GOVERNMENT AGENCY WHO DISCRIMINATED AGAINST ME *(If more than one list below.)*

| NAME | NUMBER OF EMPLOYEES, MEMBERS | TELEPHONE *(Include Area Code)* |
|---|---|---|
| Tufts University | More Than 100 | 617-628-5000 |

| STREET ADDRESS | CITY, STATE AND ZIP CODE | COUNTY |
|---|---|---|
| 419 Boston Avenue, | Medford, MA 02155 | Middlesex |

| NAME | TELEPHONE NUMBER *(Include Area Code)* |
|---|---|
| | |

| STREET ADDRESS | CITY, STATE AND ZIP CODE | COUNTY |
|---|---|---|
| | | |

CAUSE OF DISCRIMINATION BASED ON *(Check appropriate box(es))*

☐ RACE  ☐ COLOR  ☒ SEX  ☐ RELIGION  ☐ AGE

☒ RETALIATION  ☐ NATIONAL ORIGIN  ☐ DISABILITY  ☐ OTHER *(Specify)*

DATE DISCRIMINATION TOOK PLACE
EARLIEST *(ADEA/EPA)*    LATEST *(ALL)*

☒ CONTINUING ACTION

THE PARTICULARS ARE *(If additional paper is needed, attach extra sheet(s)):*

PLEASE SEE ATTACHED SHEETS

I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or telephone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures.    **YES**

NOTARY - *(When necessary for State and Local Requirements)*

NOTARY: X _Mimi E. H Gronski_

I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief.

I declare under penalty of perjury that the foregoing is true and correct.

DATED: X 5/1/2020    X _Mm Ing_

Date    Charging Party *(Signature)*

SIGNATURE OF COMPLAINANT

X _Wm Ing_

SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE *(Day, month, and year)*

DATED: X 5/1/2020

EEOC FORM 5 *(Test 10/94)*

MY COMMISSION EXPIRES: X DEC 18, 2020

A-015

CONTINUATION PAGE TO CHARGE OF DISCRIMINATION

My name is Melissa Ing. I am female. I am employed by the Tufts School of Dental
Medicine ("Tufts"). I am a dentist and I currently hold the position of Associate
Professor. During my employment, I have been subjected to sexual harassment,
retaliation for complaining of sexual harassment, and gender discrimination. The actions
of Tufts and the actions of my managers and supervisors for which Tufts is responsible,
are in violation of M.G.L. c.151B and 42 U.S.C. section 2000e.

The facts of this matter are set forth below.

I graduated from Tufts Dental School in 1989. While in dental school I was one of six
people chosen as student teaching faculty members. I knew even then that my career
would always be in dental education. I am totally dedicated to the profession, and to
education. My CV clearly states this.

I have been teaching dentistry since 1992. I have won numerous teaching awards
including the Kaiser-Permanente award for Teaching Excellence, twice, from the
University of Connecticut School of Dental Medicine, where I continued my teaching
career. I have had numerous teaching award nominations from both the University of
Connecticut and from Tufts, including the Tufts Teaching with Technology award and
Tufts Distinction Awards, and have been inducted into the Tufts Robert Andrews
Research Society for promoting research. I was nominated for Tufts Sesquicentennial
Award for service to the institution. In addition, I was nominated for the 2020 National
Science Board Public Service Award and I was nominated for the national 2020
Presidential Award for Science, Math, and Engineering Mentoring.

I won the very prestigious national Award for Teaching Excellence given by the
American Dental Education Association and Colgate Palmolive in 2015. I have lectured
locally, nationally, and internationally; many of my abstracts, manuscripts, a book
chapter, online articles, an international webinar, and international podcasts have been
published. I am a recognized authority, both nationally and internationally in my areas of
expertise. I have been in leadership roles within Tufts, with statewide projects, and I hold
several national leadership roles.

I started working for Tufts in June 2011. While at Tufts, I had to endure inappropriate
and embarrassing comments and gestures from a colleague, Dr. Roland Vanaria. Dr.
Vanaria is approximately 16 years older than I am. These actions by Dr. Vanaria resulted
in me being subjected to a sexually harassing environment.

The inappropriate conduct related to Dr. Vanaria increased in early 2017.

In late January 2017, my direct supervisor, Dr. Peter Arsenault, informed me that Dr.
Vanaria wanted to ask me out. I told Dr. Arsenault that I was not interested. In early
February, Dr. Vanaria did indeed ask me out, to which I politely declined.

1

CONTINUATION PAGE TO CHARGE OF DISCRIMINATION

In early March 2017, Dr. Vanaria entered my office uninvited, and propositioned me, asking me to "have monkey business" with him. I was nervous, felt trapped by myself in the office and I finally got him to leave. For many months after that, Dr. Vanaria would wait uninvited in the conference room connected to my office for me to finish my clinic duties in the evening.

Essentially, Dr. Vanaria was "stalking" me, even after I complained to Dr. Arsenault and asked if Dr. Vanaria could be moved down to his own office on the 2nd floor and not allowed to the office space/adjoining conference area.

Among other inappropriate behaviors, Dr. Vanaria would regularly leer at me and stare at my legs and chest, would state things to me such as "come on, lift up your lab coat," he would comment on how he liked my "boots and nylons," and he would slap his thigh and say "come on Hon, why don't you sit on my lap?" He also continued his stalking behavior after evening clinic.

I complained to my supervisor, Dr. Arsenault multiple times about this harassing behavior. I did my best to avoid Dr. Vanaria.

In June 2017, I emailed Dr. Arsenault and asked him to please fix this problem with Dr. Vanaria once and for all. The next day Dr. Arsenault told me "I wish that you did not put this in writing because I now need to report this."

In mid-June 2017, the Tufts OEO office commenced a severely flawed investigation of these matters. I fully disclosed the facts of the harassment.

Throughout the "investigation," my concerns were minimized, I was essentially blamed for complaining of Dr. Vanaria's conduct, and I was made to feel that I had done something wrong by my complaint.

By September 2017 Dr. Vanaria had not been removed from the premises, and was still stalking me in my office area. To this day, I am not aware of the extent if at all, that Dr. Vanaria was disciplined for his inappropriate conduct.

I explained multiple times to OEO that I was worried about retaliation and asked that Dr. Vanaria be moved quietly to a second floor office (a different floor), to save both of us any embarrassment. Instead of resolution, bullying of me ensued. The bullying and erroneous gossiping continued and became worse when Dr. Vanaria was dismissed from the school in July 2018, for reasons having nothing to do with my situation.

On November 15, 2017 the "investigator" yelled at me on the phone, and accused me of bringing up my complaint only because of "Harvey Weinstein and the Me 2 movement." The investigator also accused me of only bringing up my complaint, because I had found out that another female faculty member had previously left the school after reporting her own problems with Dr. Vanaria, and receiving no help.

2

CONTINUATION PAGE TO CHARGE OF DISCRIMINATION

I was denied promotion to full professor in 2018 (for which I was and am fully qualified), and I was denied promotion in two more promotion cycles after that in 2019.

There were two promotion cycles in 2019, with the second deadline being mid November 2019.

During 2018 and 2019, the criteria for promotion which were supposedly being given most emphasis in considering my application, were consistently being changed by Tufts Dental School faculty, and specifically by my newly replaced chair, Dr. Zandona, in the middle of my request to reapply for promotion.

Additionally, I was criticized for not having adequate qualifications in certain of the promotion criteria areas, which were actually areas in which I excelled. Furthermore, there were specific areas that Dr. Zandona requested I demonstrate, which I did, even before being requested to do so. Once these were demonstrated, different criteria were added and the previous criteria negated. Despite this, my colleagues were not held to these same criteria, and were promoted. My qualifications far exceeded those of my male peers who were promoted during the course of 2018 and 2019.

During March 2019 I was told by Dr. Zandona to hold off any talk of promotions until July 2019. When I met with Dr. Zandona on July 18, 2019 she asked why I was meeting with her, and I was informed by her that the guidelines for promotion changed on July 1, 2019. In August 2019, I was surprised when Dr. Zandona told me that I should add to a narrative about myself which I had prepared (at the suggestion of Dean Karimbux in relation to trying to get promoted), a description of all of my weaknesses. I did not understand why she would want me to list supposed weaknesses in a paper designed to help me get promoted.

I was falsely told by Dr. Zandona that I did not have certain qualifications, when I absolutely did have them. The objectives I was told by Dr. Zandona that I would need to accomplish being promoted, were constantly being changed and made more onerous. What became extremely clear through this "shell game," was that no matter how qualified I was, and no matter how favorably I rated when compared to my peers, I would never be promoted.

During 2019, including the November 2019 promotion cycle, one of the requirements for promotion to full professor (the promotion which I sought) was that one's department chair had to provide a letter of endorsement for promotion for the individual seeking promotion. Without the department chair's endorsement, no promotion to full professor would occur. I note that in 2018, the person who was then the department chair, Dr. Charles "Chuck" Rankin, had endorsed me for promotion to full professor. Dr. Rankin has worked with me since 2011 when I moved to Tufts.

During the 2019 promotion cycles, Dr. Zandona had just been named the department chairperson.

3

CONTINUATION PAGE TO CHARGE OF DISCRIMINATION

In October, 2019 in the course of conversation, Dr. Zandona stated to me that she would not endorse me for promotion.

With the November promotion cycle coming up and the chairperson's letter of endorsement due by November 15, 2019, Dr. Zandona called a meeting on November 13, 2019. Present at the meeting were Dr. Zandona, myself and Dr. Peter Arsenault. Dr. Zandona stated to me that I "needed a lot of improvement", which was a false statement.

I asked her what she meant, and in the course of her speaking with me during this meeting, Dr. Zandona said that she would not be endorsing me for promotion for this promotion cycle.

I did not understand why Dr. Zandona called yet another meeting if the promotion cycle would not be until November 2020. She had already told me in October, 2019 that she would not be endorsing me for promotion. Without Dr. Zandona's endorsement of me for promotion, it was not possible for me to be promoted to full professor in that promotion cycle.

At a later point in this conversation, I said to Dr. Zandona that I did not believe she was ever going to write me a letter of endorsement for promotion. Dr. Zandona did not respond when I made this statement.

With regard to one of the promotion criteria, Dr. Zandona told me that I had to "start from ground zero" as far as the other Area of Teaching Excellence which supposedly was not problematic. Dr. Zandona told me that my 2015 national Teaching Excellence Award "was old". I asked her what that meant since I only got to Tufts in 2011, and that this award applies to this promotion cycle.

Dr. Zandona said that I "do not have an area of focus" which she claimed that I needed for promotion. This was not true. She told me in the winter to focus on celiac disease, which I was already researching before her arrival. After demonstrating over 12 celiac projects/national and international lectures/manuscripts/webinar she told me during the November meeting that my celiac manuscript "is not peer reviewed."

The Guidelines do not say that I need to publish to be promoted, yet I am far more prolific in publications than the others combined. Furthermore, when I pointed out that my next celiac research would be done with Harvard Medical School, Massachusetts General Hospital, and Boston Children's Hospital Dr. Zandona said "but you do not know how to do that type of research," when I had already been in the middle of my research proposal.

Dr. Zandona told me that in order to be promoted (since I was applying under Educational Leadership) that I must write papers about "education." I turned to Dr. Arsenault and asked if he had written anything about education? He did not answer.

4

CONTINUATION PAGE TO CHARGE OF DISCRIMINATION

I asked Dr. Zandona if Dr. Harold had written anything about education for his
application to full professor, and she did not answer. I said I did not think so.
I then said, "Well guess what, I did write several papers about educational research and
on dental education even though that is not a requirement and you are making stuff up."
Dr. Zandona's answer was: "But it was not peer reviewed."

Dr. Zandona then said that I did not show leadership, which was also false.

Dr. Zandona then claimed that I am not "international." I reiterated again that I was
international, many, many times over. I turned to Dr. Arsenault and asked him: "Peter
are you international?" He did not answer, because he knew that he was not. I asked Dr.
Zandona if Dr. Harold was international? She did not answer, because she knew that he
was not. They were and are holding me to a different standard, even though I have given
many international lectures, podcasts, webinar, and interviews.

In addition to being given false reasons for non-promotion, and the requirements for a
promotion being continually shifted, several male peers of mine who were not as
qualified as I was, and who did not possess the qualifications which I was told I lacked,
were promoted.

I have been ostracized, and I have been improperly denied promotions. I have been
subjected to a hostile work environment.

All of this is due to my complaints of sexual harassment, and my gender. I also note that
I made a complaint about improper, unsafe and unprofessional conditions in the Dental
School clinic stemming from my own exposure to these conditions. I will be pursuing
those claims in another forum. The wrongful failures to promote me when male
colleagues were receiving promotions also constitutes gender discrimination.

All of these actions by Tufts violate the federal and state laws prohibiting discrimination
and retaliation for complaining of sexual harassment. I note that it is my understanding
that Tufts University has previously been the subject of several legal actions related to
sexual harassment and/or retaliation for complaining of sexual harassment, as well as a
separate legal action regarding gender discrimination within the dental school.

The reason I was treated in the manner set forth above was retaliation against me for
complaining of sexual harassment, and gender discrimination.

Tufts is responsible for the discriminatory actions of my managers and supervisors set
forth above. These actions for which Tufts is responsible, constitute illegal
discrimination against me on the basis of gender, and illegal retaliation, in violation of
M.G.L. c.151B and 42 U.S.C. §2000e.

The actions of my managers and supervisors toward me as discussed above, for which
Tufts is responsible, were knowing, intentional and willful.

5

CONTINUATION PAGE TO CHARGE OF DISCRIMINATION

The actions of my managers and supervisors toward me as discussed above, for which Tufts is responsible, have caused me to suffer financial harm, physical harm and illness, injury to my career, as well as much emotional pain and suffering. I will continue to suffer these injuries into the future.

I demand that I be awarded damages against Tufts, including monies to compensate me for lost back pay, lost front pay, injury to my career, punitive damages, medical expenses, emotional pain and suffering, lost benefits, attorneys fees, interest, lost future earning capacity, promotion to full professor, and that I be granted any such other and further relief that this Commission finds to be appropriate.

SIGNED UNDER THE PAINS AND PENALTIES OF PERJURY THIS 5/1 ___ DAY OF MAY, 2020.

MELISSA ING

6