UNITED STATES COURT OF APPEALS FOR THE FIRST CIRCUIT

_____

Number 23-1030

_____

**Melissa Ing**
**Plaintiff-Appellant**

**v.**

**Tufts University**
**Defendant-Appellee**
_____

Appeal from the United States District Court for the District of Massachusetts

_____

REPLY BRIEF OF PLAINTIFF-APPELLANT MELISSA ING

_____

Mitchell J. Notis
Law Office of Mitchell J. Notis
27 Harvard Street
Brookline, Massachusetts 02445
617-487-8677
mitchnotis@aol.com
Counsel for Plaintiff-Appellant

TABLE OF CONTENTS

Page

Table of Contents…………………………………………………………….i
Table of Authorities……………………………………………………….ii
Argument……………………………………………………………….1
    I.    Dr. Ing's Retaliation claims…………………………………..1
    II.    Dr. Ing's Promotion claims…………………………………… 9

Conclusion………………………………………………………….14
Certificate of Compliance
Certificate of Service

TABLE OF AUTHORITIES

Page

**Cases**

Crawford v. Metropolitan Government of Nashville and Davidson
County, Tennessee, 555 U.S. 271, 129 S. Ct. 846 (2009)……………4, 5

Mole v. University of Massachusetts, 442 Mass 582 (2004)……………4

Theidon v. Harvard University, 948 F. 3d 477 (1st Cir. 2000)………10,11

Statutes

MGL Chapter 151B……………………………………………………6, 8, 9, 13, 14
MGL Chapter 151B section 4(4)………………………………………………4
MGL Chapter 151B section 5………………………………………………4
Title VII……………………………………………………………4, 6, 8, 9, 13
Title IX……………………………………………………………8, 9, 13
42 USC section 2000e-3(a)……………………………………………4

**INTRODUCTION**

1. Dr. Ing engaged in protected activity for which she was illegally retaliated against, **not on one, but on two occasions**. On the first occasion in 2017, Dr. Ing participated in the discrimination complaint process. On the second occasion in December 2018, Dr. Ing reported her opposition to discriminatory practices (sexual harassment).  An adverse action was taken against Dr. Ing within 27 days of her second act of protected activity, when she made Tufts University aware of her opposition to sexual harassment.

2. The fact that Dr. Ing was retaliated against only 27 days after engaging in her second act of protected activity, establishes a causal connection to Dr. Ing's first act of protected activity in 2017, and the adverse action she suffered in early 2019, as well as to the second act of protected activity.

3. The procedural irregularities and errors during Dr. Ing's promotion process were serious enough that her promotion claims should not have been dismissed on summary judgment.

**I.      Dr. Ing's Retaliation Claims**

Prior to 2017, Dr. Ing was being subjected to sexually harassing conduct by a colleague, Dr. Roland Vanaria. JA at 409.  In early 2017, the inappropriate conduct by Dr. Vanaria intensified. Id.  In its brief in this action, Tufts disingenuously refers several times to the sexual harassment as consisting of Dr. Vanaria simply

asking Dr. Ing on a date. That is wildly inaccurate and misrepresentative. Among other things, Dr. Vanaria would linger around Dr. Ing's office, make inappropriate sexual innuendos, ask Dr. Ing to lift up her lab coat, stare at Dr. Ing's body parts (breasts and legs), say that he liked Dr. Ing's boots, nylons and shoes, ask Dr. Ing to have "monkey business" with him, slap his thigh and say to Dr. Ing "come on Hon, why don't you sit on my lap." Appellant's Brief at 2-3.  Dr. Vanaria would also essentially be stalking Dr. Ing while she was at work  JA at 410.

After Dr. Ing complained to her supervisor about Dr. Vanaria's conduct multiple times, Tufts opened an investigation starting in approximately June 2017.

It was not clear there was an actual end date to the investigation.  The Tufts investigator claimed that Dr. Vanaria's conduct did not violate the Tufts sexual harassment policy, although the investigator acknowledged that Dr. Ing's allegations <u>were indeed allegations of sexually harassing conduct</u>. JA at 44; 432. This was not the first claim of harassing conduct by Dr. Vanaria at Tufts. JA at 432 and 434-435.

**By participating in this investigation, Dr. Ing was engaging in protected activity. This was her first instance of engaging in protected activity which is relevant to this case.  Dr. Ing's second instance of engaging in protected activity occurred on December 13, 2018.**

2

On December 13, 2018, Dr. Ing met for the first time with her new department

Chairperson, Dr. Andrea Zandona.  During this meeting Dr. Ing told Dr. Zandona

of having been sexually harassed by a colleague at Tufts, Dr. Vanaria, and having

filed a complaint with Tufts about that.  JA at 426-427; 469.  In this conversation,

Dr. Ing was making Dr. Zandona aware of her active opposition to sexual

harassment.

**In a meeting on January 9, 2019, only 27 days later, one of the first**

**things that Dr. Zandona said to Dr. Ing was "I most likely am not going**

**to promote you."** JA at 427.  Dr. Zandona has denied having made this

statement or words to that effect during the meeting, and has claimed to have said

nothing remotely like that.  Dr. Zandona testified that she would not have said

that, as she did not know Dr. Ing's work well enough at that point.  JA at 472.

In a meeting with Dr. Zandona on March 21, 2019, Dr. Zandona asked Dr.

Ing "how often are you going to sexual harassment therapy?" Dr. Ing said

that she was going once per week. In response, Dr. Zandona stated "you need to go

more often."    During her deposition, Dr. Zandona denied asking Dr. Ing questions

about her "sexual harassment therapy." JA at 472; 477.

It is a material fact that Dr. Zandona had decided not to promote Dr. Ing only three

weeks after learning of Dr. Ing's complaint of sexual harassment, at a time when

3

Dr. Zandona knew **nothing** about Dr. Ing's qualifications for promotion.  To the extent Appellee questions whether this statement was made, a genuine dispute as to a material fact exists which should have resulted in the denial of summary judgment.

In <u>Mole v. University of Massachusetts</u>, 442 Mass 582, 591-592 n.13 (2004) the Supreme Judicial Court discussed the activity which would be "protected activity" for purposes of a retaliation claim:

> For purposes of a claim under G. L. c. 151B, § 4 (4), a plaintiff has engaged in protected activity if "**he has opposed any practices forbidden under this chapter** or . . . has filed a complaint, testified or assisted in any proceeding under [G. L. c. 151B, § 5]." … With respect to a retaliation claim under Title VII, a person has engaged in protected activity if "**he has opposed any practice made an unlawful employment practice by [Title VII]**, or . . . has made a charge, testified, assisted, or participated in any manner in an investigation proceeding, or hearing under [Title VII]." 42 U.S.C. § 2000e-3(a)."

(emphasis added)

In <u>Crawford v. Metropolitan Government of Nashville and Davidson County, Tennessee</u>, 555 U.S. 271, 129 S. Ct. 846 (2009), the U.S. Supreme Court discussed the "opposition clause."  At 274, the Court discussed the retaliation prohibition:

> "The Title VII anti retaliation provision has two clauses, making it "and unlawful employment practice for an employer to discriminate against any of his employees...[1] Because he has opposed any practice made an unlawful employment practice by this subchapter, or [2] because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter." 42 U.S.C. section 2000e-3(a).  The one is known as the "opposition clause," the other as the 'participation clause'…"

4

In <u>Crawford</u>, the Court held that an employee engaged in protected "opposition"
when the employee had reported discrimination in response to an employer's
questions, during an internal investigation of discrimination or harassment
complaints made by others.  Upon being interviewed by a human resources
officer about whether she had witnessed inappropriate behavior on the part of an
alleged harasser, the plaintiff in <u>Crawford</u> described several instances of sexually
harassing behavior to the human resources officer.

At 276, the Court held that the statement given by the employee in <u>Crawford</u> "is
thus covered by the opposition clause, as an ostensibly disapproving account of
sexually obnoxious behavior toward her by a fellow employee, an answer she says
antagonized her employer to the point of sacking her on a false pretense."

In ruling on this issue, at 276 the Court favorably cited an argument made in the
case by the United States as *amicus curiae* based upon an EEOC guideline:

> "When an employee communicates to her employer a belief that the
> employer has engaged in...a form of employment discrimination, that
> communication" virtually always "constitutes the employee's *opposition* to
> the activity."

(emphasis in original)

By informing her new Chairperson that she had been subjected to sexual
harassment by a colleague at Tufts, that she had filed a formal complaint with
Tufts regarding this sexual harassment, and that she had been involved in an

5

investigation of this sexual harassment, Dr. Ing was clearly expressing to

Dr. Zandona, Dr. Ing's "opposition" to prohibited practices she believed in good

faith that Tufts had engaged in.  The statement Dr. Ing made to Dr. Zandona on

December 13, 2018 constituted protected activity under the opposition clauses of

both MGL chapter 151B as well as Title VII. This was the second instance in

which Dr. Ing had engaged in protected activity.

The statement by Dr. Zandona that Dr. Ing would most likely not be

recommended for promotion, establishes a strong and clear temporal

relationship between the protected activity which occurred on December 13, 2018

(Dr. Ing's "opposition"), and the adverse action which occurred on January 9,

2019.

Similarly, the fact that Dr. Zandona subjected Dr. Ing to this adverse action only 27

days after learning of Dr. Ing's 2017 protected activity (under which she engaged

in protected activity under the "participation clause" as opposed to the "opposition

clause"), is strong and clear circumstantial evidence that Dr. Zandona's actions

were related to the initial participation in the discrimination complaint process.

Whether the December 13, 2018 statement by Dr. Ing is deemed to be a "bridge"

between the "participation clause" protected activity of 2017 and the adverse

action, or itself "opposition clause" protected activity, Dr. Ing has established for

6

purposes of summary judgment the fact that she was retaliated against for engaging in protected activity. If the statement by Dr. Zandona is deemed to have been made, the retaliation has been established.  As there has been no legitimate business reason advanced for the January 2019 adverse action, Dr. Ing does not have to try to show that an unstated motivation was merely a "pretext." On the other hand, if there is a question whether Dr. Zandona's statement establishing retaliation was made, there is a genuine issue of material fact which it was error to determine on summary judgment.[1]

It has not been contested that Dr. Ing made the statements about sexual harassment to Dr. Zandona. The issue which has been contested, the genuine issue of material fact, is whether 27 days later Dr. Zandona told Dr. Ing that she was most likely not going to promote her. Dr. Ing has stated under oath that this occurred, Dr. Zandona has denied under oath that it occurred. A genuine dispute of material fact exists.

At the initiation of this litigation, the Trial Court held that the statement made by Dr. Ing to Dr. Zandona on December 13, 2018 regarding having engaged in a

---

[1] Appellee incorrectly argues in its brief at 41-46 that Dr. Ing contradicted her claim as to what Dr. Zandona said on January 9, 2019, in a later statement she made in writing to the department administrator referring to Dr. Zandona not giving her a letter of recommendation. The two statements are not contradictory, they are complimentary and equivalent. Furthermore, this is absolutely not a matter to be considered on summary judgment. Any claim of contradiction is to be determined at trial by a jury, and credibility weighed accordingly.

sexual harassment complaint, followed 27 days later by an adverse action, could be

reasonably inferred to result in causation in relation to a retaliation claim.

Specifically, in denying Tufts' motion to dismiss, the Court wrote in part as

follows:

> "Turning to Ing's sexual harassment/protected activity claims, Tufts
> challenges whether she has plausibly pled causation. Again, the court
> believes she has. With respect to her Title VII and Chapter 151B claims (as
> well as a portion of her Title IX claim), for example, Ing alleges that she
> informed Zandona about her sexual harassment complaint in December of
> 2018 and that Zandona subsequently withheld her endorsement for a
> promotion. It is true, of course, that the ultimate decision not to recommend
> Ing came nearly a year after this December meeting. Ing alleges, however,
> that Zandona made the decision that she likely would not promote Ing three
> weeks after their first meeting and that the October 2019 final denial was
> merely the confirmation of that decision. She also alleges that Zandona
> commented on Ing's sexual harassment therapy three months after first
> hearing of Ing's complaint. **Viewed in the light most favorable to Ing, the
> court can reasonably infer causation from this chain of events."**

(emphasis added)

**In this particular case, the facts never changed.** The well pleaded facts upon

which the Trial Court denied the motion to dismiss were absolutely no different

than the facts existing when summary judgment was ruled upon. This is so, as Dr.

Zandona both specifically denied having made the "will likely not promote"

statement, and additionally, said that she had no knowledge of Dr. Ing's

qualifications at that time. For the purposes of summary judgment, Dr. Ing's

version of the January 9, 2019 conversation must be accepted as true. The Trial

Court itself held that a reasonable jury could find in Dr. Ing's favor on the

retaliation claim. Summary judgment on the retaliation claim was in error.

The holding of the Trial Court on the retaliation claims under MGL Chapter 151B, Title VII and Title IX must be reversed, and those claims remanded for trial.

## II.    Dr. Ing's Promotion Claims.

Tufts' misleading claims regarding "external reviewers" at pages 8-9 of its brief require correction.  Specifically, the cited individuals are inaccurately labeled "external reviewers," in an attempt by Tufts to add significance to the remarks by these two individuals (Drs. Wolff and Blanco).  Dr. Ing's "external reviewers" were Drs. Frank Nichols, Jonathan Meiers, Howard Strassler, Ed Peters, Colin Kong, Chandra Iyer, Paul Longo and Michael Goupil.  They all gave Dr. Ing excellent reviews.

Dr. Wolff and Dr. Blanco were merely professional colleagues of Dr. Ing., who had absolutely nothing to do with the Tufts promotion process. Dr. Wolff was affiliated with New York University and later the University of Pennsylvania. Whether or not in Dr. Wolff's opinion Dr. Ing  would be promoted to professor at either of these institutions, has absolutely zero relevance the validity of her promotion claims at Tufts. Dr. Blanco was affiliated with the Tufts University School of Medicine.  Appellee neglects to mention that Dr. Blanco communicated to Dr. Ing that she, Dr. Ing, "vastly fulfill the requirements for educational

9

leadership." JA at 354 and 424.

The Procedural Irregularities

In her main brief, Dr. Ing has challenged the Trial Court's ruling that she did not adequately raise issues of significant procedural irregularities in the promotion process during which she was denied promotion to full professor.

Appellee has opposed that claim, relying heavily upon this Court's decision in Theidon v. Harvard University, 948 F. 3d 477 (1st Cir. 2000), and related cases.

In Theidon, this Court held that questions regarding an employer's business judgment are insufficient to raise a triable issue as to pretext, Theidon, supra at 497, that courts may not sit as super personnel departments assessing the merits of employers' nondiscriminatory business decisions, Theidon, supra at 499, that a bare showing of administrative error, without more, does not make out a case of either pretext or discrimination, id., and that the anti-discrimination laws do not insure against inaccuracy or flawed business judgment on the employer's part, id. Appellant does not question these long standing principles. Theidon also provides at 497 that:

> "Pretext can be shown by such weaknesses, implausibilities, inconsistencies, or contradictions in the employers proffered legitimate reasons for its action that a reasonable fact finder could rationally find them unworthy of credence and hence infer that the employer did not act for the asserted nondiscriminatory reasons."

10

Even if a factual inconsistency is deemed an administrative error or clerical error, the question becomes whether a "reasonable jury could glean a perceivable or demonstrable motivation" that aligns with a plaintiff's theory of the case, <u>Theidon</u>, supra at 499. To paraphrase <u>Theidon</u> at 499, does a case present "troubling inconsistencies that give rise to a reasonable inference of pretext." In this case, particularly when these "errors" are viewed in the totality of the circumstances, they prove that the reasons advanced by Tufts for not promoting Dr. Ing in 2018, are a pretext for discrimination.

In <u>Theidon</u>, this Court spoke frequently of whether particular facts could be held by a "reasonable" fact finder or a "reasonable" jury to indicate pretext, or whether a "reasonable" inference of pretext could be found to exist.

The issue of whether a reasonable fact finder could hold that pretext existed, or draw a reasonable inference of pretext, cries out for determination of these issues by a jury, not by a judge.

Certainly there are cases in which factual disparities are such that as a matter of law they can be held to be "merely" administrative or clerical errors and not evidence of pretext, and therefore these crucial questions can be decided by a court. That is not the case here, especially given the totality of the circumstances in this case and the numerous questionable practices in the Tufts promotion

11

process to which Dr. Ing was subjected.

The Missing Promotion Committee Minutes-Although Tufts claims that the

minutes of the FAPTC (promotion committee) meetings at which Dr. Ing's

application for promotion was discussed do not exist and were never taken, this is

contrary to the testimony of the non voting administrator who attended the various

meetings at which Dr. Ing's promotion was voted upon, who affirmatively testified

that she took the required minutes at the meetings, and that the minutes should still

exist.

The Course Director Issue--Despite the fact that Dr. Ing was listed as a Course

Director in various course listings and online, and the FAPTC was not certain what

the title "Course Director" entailed, the FAPTC held that Dr. Ing should not be

promoted because she did not meet the definition of a "Course Director."

The flawed evidence of the vote--The only document which was produced

supposedly showing the vote on Dr. Ing's application for promotion, is of

uncertain provenance and is undated.

The repeated application review--There has been no explanation for why Dr. Ing's

application was reviewed multiple times and another vote was taken, after the vote

disapproving of her promotion.

The numerous promotion disapproval letters--There was a series of five different letters informing Dr. Ing why she was not going to be promoted. Only the fifth and final letter edited by Dean Thomas, stated that the promotion was being denied. Dean Thomas' determination was different than the prior determinations. It was Dean Thomas of those who had involvement in the promotion process, who was aware of Dr. Ing's allegations of sexual harassment against Dr. Vanaria. It was Dean Thomas who had two sexual harassment allegations against himself.

The delay in informing Dr. Ing of the decision--Although Dr. Ing's application for promotion was disapproved in early April 2018, she was not informed of the disapproval until five months later, an unexplainable gap.

When all of these irregularities are looked at as a whole, it can be seen that this is **not** a matter of administrative errors or clerical errors.  These are "troubling inconsistencies that give rise to a reasonable inference of pretext."

To the extent Appellee has come forward with supposed explanations for these various discrepancies, it must be left to a reasonable fact finder, a jury, to determine if these matters are benign, or if they are a pretext for discrimination.

The holding of the Trial Court on the promotion denial claims under MGL Chapter

13

151B, Title VII and Title IX must be reversed, and those claims remanded for trial.

**CONCLUSION**

Dr. Melissa Ing has devoted her life and career to dental education.  Dr. Ing considers her highest calling to be that of an educator, a researcher and a healer. She found immense joy in mentoring and guiding students to successful dental careers. Dr. Ing is a national award-winning dental educator.  She is nationally and internationally recognized in her areas of expertise, and is very involved with presentations, podcasts, webinars, multiple publications, book chapters, research and scholarly activity.

Dr. Ing was qualified for promotion to full professor at Tufts Dental.  She earned the right to be a full professor at Tufts Dental.  She earned the right to be a full professor at Tufts, and would have received promotion to full professor at Tufts, if not for the barrier of gender discrimination placed in front of her.

Dr. Ing's ability to remain an educator at Tufts was destroyed by the sexual harassment and gender discrimination she endured.  Instead of the support she very much needed during and after she reported sexual harassment, she faced hatred, retaliation and ostracization from colleagues and supervisors.

Dr. Ing took the brave step of reporting sexual harassment because she worried not just for her own safety, but because she knew it was the right thing to do for all

men and women, including her dental students at Tufts School of Dental Medicine. Once her supervisors, colleagues and her department chair learned of her having taken this brave step, her career was ruined.

Dr. Ing seeks the opportunity to have her claims be heard by a jury. She wants them to decide whether she was denied promotion due to her gender, and whether she was retaliated against for having reported the sexual harassment she suffered.

It was easier for the District Court to dismiss Dr. Ing's claims, than to delve into the nuances of those claims. The first time the District Court reviewed this matter on Appellee's motion to dismiss, the Court wrote that based upon the facts presented in the complaint, causation could reasonably be inferred from Dr. Ing's claims. Those facts did not change after discovery was completed in this action. The District Court erred, and this case must be remanded for trial on the merits.

Respectfully submitted,
MELISSA ING
By her Attorney,

/s/ Mitchell J. Notis
_____
Mitchell J. Notis, BBO# 374360
LAW OFFICE OF MITCHELL J. NOTIS
27 HARVARD Street, Brookline, MA 02445
Tel.: 617-487-8677

UNITED STATES COURT OF APPEALS FOR THE FIRST CIRCUIT
_____
Number 23-1030
_____

**Melissa Ing**
**Plaintiff-Appellant**

**v.**

**Tufts University**
**Defendant-Appellee**
_____
Appeal from the United States District Court for the District of
Massachusetts
_____

CERTIFICATE OF COMPLIANCE WITH RULE 32(a)
_____

This brief complies with the type volume limitations FRAP 32(a)(7)(b) because the
brief contains 3546 words, excluding the parts of the brief exempted by FRAP
32(a)(7)(b)(iii).

This brief complies with the typeface requirements of FRAP 32(a)(5) and the type
style requirements of FRAP 32(a)(6) because the brief has been prepared in a
proportionately spaced typeface using Microsoft Word in 14 point font in Times
New Roman.

MELISSA ING
By her Attorney,

/s/ Mitchell J. Notis

_____
Mitchell J. Notis, BBO# 374360
LAW OFFICE OF MITCHELL J. NOTIS
27 HARVARD Street
Brookline, MA 02445
Tel.: 617-487-8677

UNITED STATES COURT OF APPEALS FOR THE FIRST CIRCUIT

————————————————————
Number 23-1030
————————————————————

**Melissa Ing**
**Plaintiff-Appellant**

**v.**

**Tufts University**
**Defendant-Appellee**

————————————————————
CERTIFICATE OF SERVICE
————————————————————

I, Mitchell J. Notis, hereby certify that on May 19, 2023, I electronically filed the foregoing document with the United States Court of Appeals for the First Circuit by using the CM/ECF system.  I certify that the following parties or their counsel of record are registered as ECF Filers and that they will be served by the CM/ECF system:

Douglas R. Sweeney, Esq.
Holland & Knight, LLP
10 St. James Avenue
Boston, MA 02116
617-573-5844
Douglas.Sweeney@hklaw.com

Jeremy M. Sternberg, Esq.
Holland & Knight, LLP
10 St. James Avenue
Boston, MA 02116
617-854-1476
Jeremy.Sternberg@hklaw.com

/s/Mitchell J. Notis

_____

MITCHELL J. NOTIS
BBO# 374360
Law Office of Mitchell J. Notis
27 Harvard Street, Brookline, MA
02445
617-487-8677
mitchnotis@aol.com